Jennie M. GRIFFIN, Plaintiff,

Constance M. Anderson,
Plaintiff–Appellee,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,
Defendants–Appellants.

No. 91–1523.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 7, 1991.

Decided Sept. 23, 1993.

Kurt Berggren (argued and briefed), Ann Arbor, MI, for plaintiff-appellee.

A. Peter Govorchin, Asst. Atty. Gen. (argued and briefed), Corrections Div., Lansing, MI, for defendants-appellants.

Before: BOGGS and NORRIS, Circuit Judges, and TIMBERS *, Senior Circuit Judge.

BOGGS, Circuit Judge.

This case involves the question of what monetary compensation and compensatory

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

promotions are required to place a female employee of the Michigan Department of Corrections, who has been discriminated against, in the same position as if she had not been discriminated against. Constance Anderson is a female employee who was unquestionably discriminated against in prison employment, at least through 1982. After that time, discrimination in the areas under consideration apparently ceased, but Anderson had suffered harm in her career. By a 1988 order, not appealed on this issue by the defendants, the district court ordered that she be compensated and promoted as though she had followed the career track of a male prison employee, Gerald Hofbauer, "to the present time." Pursuant to that order, a hearing was held in November 1990 to calculate the job classification that Anderson would currently hold had she not been the victim of gender discrimination. Based on that hearing, the special master recommended that Anderson be promoted to Deputy Prison Warden XII. There are eleven level XII positions in the Department of Corrections, of which only two are Deputy Prison Warden positions. In March 1991, the district court adopted the special master's recommendation, requiring that, based on Hofbauer's actual employment progression, Anderson be promoted to the Deputy Prison Warden XII position. That order was appealed and is the subject of the case before us.

Michigan now attacks any compensation to Anderson that is based on promotions Hofbauer received after his first post–1982 promotion, to Administrative Manager VIII. We hold that the 1988 order is the law of the case and Anderson should immediately be compensated and promoted in accordance with that order up to Deputy Prison Warden IX, the position held by Hofbauer at the end of the hearing leading to the 1988 order. We also affirm as to the 1991 order because the prior order remained the law of the case, and the special master and the district court did not err in determining the final promotion level received by Hofbauer.

## I

The underlying discrimination against women by the MDOC was enjoined by the district court in 1982, and apparently ceased thereafter. Based on a hearing in 1984, the court and parties agreed on the concept of establishing a hypothetical employment progression ("HEP") for each injured plaintiff. The parties wrangled over this issue, in the case of Anderson for a number of years, during which time the state was extremely recalcitrant in providing specific information on the career progression of Mr. Hofbauer, the male to whom Anderson alleged she was comparable. Ultimately, in May 1987, the magistrate submitted a report and recommendation. After objections were filed and considered, the district court issued an order on January 14, 1988 that is the foundation of our consideration of this issue. In determining back pay, the order provided that "Anderson's [HEP] must be calculated beyond the 1981 date to the *present time*" (emphasis added) and that "Anderson is entitled to additional pay as compensation until she attains the level of the position that she would have had in the absence of the discriminatory acts which are the subject of this litigation." That court found that Hofbauer was a comparable male as "[i]t is clear that Hofbauer , was correctly matched with Anderson." Finally, the court appointed a special master to handle remaining evidentiary hearings, conduct damage calculations, and monitor the progress of the parties. He was to file progress reports every ninety days, as well as a final report setting forth his findings and recommendations to the court.

Although this order appeared clear and conclusive and the litigation could certainly have been terminated had the state immediately given Anderson the promotions and pay earned by Hofbauer to that date, the difficulties between the parties continued. Finally, on January 8, 1991, the special master issued his final report regarding Anderson, concluding, based on a hearing held on November 8, 1990, that she "would likely have attained the rank of Deputy Warden [XII] had she not been the victim of gender discrimination."

We are thus required to consider plaintiff's contention, supported by the most recent order of the district court, that she is to be

compensated based on an assumed career path linked inextricably to that of Warden Hofbauer, however high that may go, until the state complies and promotes and pays her accordingly. The state's position, on the other hand, is that all the actions of the district court should be reversed back to Hofbauer's first promotion after 1982 to Administrative Manager VII, and that Anderson should be required to prove specifically that she would have received each promotion beyond that point.

## II

The purpose of front pay in a Title VII case is to put an injured party in the same position the party would have occupied in the absence of the discrimination, neither more nor less. *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1160 (6th Cir.1985); *Spears v. Board of Educ. of Pike Co.*, 843 F.2d 882, 885 (6th Cir.1988). As in all exercises predicting the future, considerable difficulties are involved. In particular, such an exercise involves an attempt to determine the degree to which a plaintiff possesses qualities that would make plaintiff successful in attaining career advancement. For advancements that come simply with longevity, courts have uniformly assumed that such advancement would occur, in the absence of specific disqualifying information. *See, e.g., Ford v. Nicks*, 866 F.2d 865, 876 (6th Cir.1989).

On the other hand, courts will not automatically assume that a person discriminated against possesses characteristics so sterling as to receive every advancement not made illegal or logically impossible under the employer's rules. *Id.* at 877; *Maney v. Brinkley Muni. Water Works*, 802 F.2d 1073, 1076 (8th Cir.1986).

Few cases involving front pay drag on a long as this one has, and thus the time, complexity, and number of speculative decision points are rarely as great as they are in this case. Even so, we believe that we can discern the outline of a proper conceptual framework for cases such as this one.

In advancement through bureaucratic structures, such as the military, state and federal governments, and large private organizations, promotions generally involve very widely differing criteria. For example, some promotions, such as from Second Lieutenant to First Lieutenant in the Army, or from GS 11 to GS 12 in federal government professional grades, generally require little more than longevity and satisfactory performance. The proportion of workers in the lower grade who advance to the higher grade upon the satisfactory completion of a certain time of service is very high, approaching 100%. On the other hand, certain promotions are the result of extraordinary success, such as achieving a level of tenure, or avoiding an "up and out" removal, that clearly does not occur with all, or even most, of the candidates. Such promotions include those from Colonel to Brigadier General in the military, from GS 15 to supergrade or Senior Executive Service in the federal government, from assistant to associate professor (achieving tenure) in prestigious universities, or from associate to partner in major law firms.

In an ideal situation, where the data is available and the parties cooperative, a court could determine what would be the progression of an *average* worker with the basic qualifications possessed by the injured party. The burden of proof would then be on the defendant to prove that the plaintiff would have performed more poorly than the average and the burden of proof would be on the plaintiff to show that she would have performed better than that average. Here, however, the court simply selected, albeit from between two persons presented by the competing parties, a "comparable male," Gerald Hofbauer, and attached Ms. Anderson's wagon to his star. As it has turned out, that has been quite favorable to Ms. Anderson. However, it might not have turned out as well. Hofbauer could have left the state, been killed in an accident, acquired a drug habit, or simply not performed very well. Under those circumstances, it would surely have been inequitable to say that she could advance no further than Hofbauer had in fact advanced before those events.

The "comparable male" approach is, in truth, simply an analogue for the "average worker" method outlined above, in those circumstances where a cohort of workers tend

to advance together. If most workers advance, then simply choosing one and tracking his advancement is likely to serve as a good approximation of the truth.

However, picking one worker and tracking his advancement, when advancement is the result of the difficult traversing of the shoals and channels, pools and narrows, of a bureaucracy is a highly suspect enterprise, *if other methods are available.*

## III

█ In our case, it was only as of 1990 that the state began to make this objection. Its earlier objections and dilatory tactics were without merit, largely for the reasons pointed out by the district court in its opinion of 1988. Even more importantly, by failing to appeal that opinion, the state has forfeited its right to complain about the basics of that order at this time. *Little Earth of United Tribes, Inc. v. Dept. of Housing and Urban Development,* 807 F.2d 1433, 1438–41 (8th Cir.1986), involved a similar situation. The district court had rendered an earlier order, which was not appealed. "The law of the case doctrine applies to issues implicitly decided in earlier stages of the same case." *Id.* at 1438. The appellate court then determined that this earlier order was law of the case. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* at 1441. (Citations omitted.) In *Little Earth,* similar to our case, almost two years passed between the earlier order and the later appeal, and the court would not "belatedly consider the propriety of issues resolved in the [earlier district court] order." *Ibid.* (Citations omitted).

## IV

█ The objection may be made that Michigan could not have appealed the 1988 order of the district court, and thus should not now be bound by it as law of the case. However, once that 1988 order was issued, all that remained was calculation of damages under specific instructions, and it is commonplace that the pendency of damage computations does not prevent an appeal. *Turner v. Orr,* 759 F.2d 817, 820 (11th Cir.1985) (appealable where a special master had "ordered the immediate promotion of Little and [required calculation of] seniority, back pay and other appropriate relief"); *Hattersley v. Bollt,* 512 F.2d 209, 213 (3d Cir.1975) (judgment appealable even though "does not ... assess the precise monetary amount owed.... because the judgment fixes ... ultimate liability and clearly establishes the parameters of that liability"); *Massachusetts Casualty Ins. Co. v. Forman,* 469 F.2d 259, 260 (5th Cir.1972) (appealable where order "amounted to a final disposition of the primary issue then existing between the parties"); *See United States v. Brook Contracting Corp.,* 759 F.2d 320, 323 (3d Cir.1985) (same).

Judge Cooke's 1988 order is couched in terms of specific damage calculations. Many of the matters to which Michigan now objects were specifically settled in the 1988 order. If remaining points of calculation would have prevented an appeal in 1988, similar points should have prevented the very 1991 appeal that Michigan has now taken, and there has been no intimation from any party or from the court that this appeal is improper.

We note that upon our affirmance of the district court, there will still remain similar calculations to be made. The Special Master's report of January 1991 contains no final amount. It simply recommends "that Constance Anderson's HEP be carried forward to [Deputy Warden XII] and that she be compensated for back pay and front pay on that basis." The district court's affirmance of January 28, 1991 also contains no dollar amount. It simply states that it "accepts the Report and Recommendation submitted by Special Master Mann." Indeed, the district court docket sheet characterizes the appeal as "interlocutory," and Michigan's notice of appeal is not styled as an appeal from a final disposition of the case, but rather from the specific order of March 28, 1991.

The Special Master also noted that the key issue in this case had been resolved in 1988, and that the remaining matters were ministerial. It stated at page 16 of a ruling on March 26, 1990 (R. 484):

"[T]he [district court] found that Gerald Hofbauer was a comparable male.... *Thus, no substantive legal issues remained unresolved.* (Emphasis in original.) Since the Court's order in January of 1988, counsel for the respective parties need only have reviewed the employment history of Gerald Hofbauer, redeveloped the HEP of Constance Anderson consistent with Hofbauer's employment history, and computed the resultant back pay owing to the plaintiff. This process did not go forward largley [sic] because the defendants repeatedly refused to supply the necessary employment records of Officer Hofbauer."

For all these reasons, Michigan did have the ability, and the duty, to appeal the 1988 order if it did not want to be bound by the merely computational and ministerial actions to be carried out by the Special Master pursuant to that order. It may not "lie back in the weeds" and then recontest those matters at this time.[1]

## V

■ Thus, we would affirm without reservation all that was ordered by the 1988 order, and we would now direct the state immediately to promote and provide compensation to Anderson based on promotions that occurred through the date of the hearing in May 1987. However, a major problem is caused in this case by the specifics of the timing of the various hearings and decisions concerning the status of Hofbauer and Anderson. The key events may be set out as follows:

—September 1984. Hearing on comparability of Hofbauer and appropriateness of granting Anderson promotions equal to Hofbauer's.

—May 28, 1987. Magistrate makes report recommending that Anderson be granted promotions and pay based on Hofbauer's employment progression beginning at ARUM

VI (level 09) in July 1978 up through Social Work Technician VIII in 1982.

—March 1982–July 1987. Hofbauer promoted to Departmental Manager VIII, Administrative Manager IX, Deputy Prison Warden IX and Deputy Prison Warden XI.

—November 15, 1987. Hofbauer received key additional promotion to Deputy Prison Warden XII.

—January 14, 1988. District court rejects the recommendation of special master, stating that Anderson's HEP "must be calculated beyond the 1981 date to the present time." No indication that Hofbauer's recent promotion was brought to the court's attention or argued by either side.

This case would be fairly simple if it were clear that the district court's ruling of January 14, 1988 included Hofbauer's promotion to Deputy Prison Warden XII. If this were the case, then Michigan's failure to appeal that ruling would make that decision the law of the case, and Michigan could not be heard now to complain about the results of that ruling.

On the other hand, if it were clear that the court's ruling in no way contemplated Hofbauer's last promotion, for example, if the ruling had come down before that promotion occurred, then we would also have little problem. The additional promotion would be fair game for later litigation, and under the analysis given above, we believe the court erred in automatically tying together the future careers of Hofbauer and Anderson, without regard to the underlying probabilities and hazards of promotion.

Here, however, it is clear that the actual promotion occurred while the case was still before the district court following the magistrate's recommendation. It also appears that neither the magistrate nor the district court took any account of that promotion in making rulings, or in ordering Michigan to calculate Anderson's HEP, using Hofbauer as a comparable male, "to the present time." While the question is not free from doubt, a careful reading of the record demonstrates that the

---

1. Counsel for appellant, Michigan Department of Corrections, had no part in the determination not to appeal the January 14, 1988 order issued by the district judge.

1988 order did include the 1987 promotion to Deputy Prison Warden XII that happened while the magistrate's recommendation was pending before the court. Our ruling based on the law of the case thus includes all the promotions Hofbauer had received at the time of the district court's ruling.

Had Michigan properly appealed the 1988 order, the shortcomings set forth above would require us to reverse the determination that plaintiff is entitled to receive the fruits of all that Hofbauer accomplished. In the usual case, the district court should determine whether the promotions Hofbauer received were promotions that would have accrued to an average member of the cohort of workers of the class he occupied at that time. If they would not have accrued to an average member, the burden would then be on plaintiff to demonstrate to the court, by a preponderance of the evidence, that in the absence of illicit discrimination, she would have attained additional advancement. If Michigan wished to argue that plaintiff was not as good as average, it would have that burden. However, the procedural posture of this case pretermits that inquiry, and we thus AFFIRM the judgment of the district court.