**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

| | |
|---|---|
| **Patrick J. Fisher, Jr.** | **Elisabeth A. Shumaker** |
| **Clerk** | **Chief Deputy Clerk** |

March 14, 2000

**TO:** ALL RECIPIENTS OF THE OPINION

**RE:** 98-8091, *McIlravy v. Kerr-McGee Coal Corp.*
Filed on February 28, 2000

On page one of the court's slip opinion, the section listing the attorneys for the appellant is corrected to read as follows:

Gregory A. Eurich, Holland & Hart, Denver, Colorado (with Marcy G. Glenn and Megan C. Bertron of Holland & Hart and Carolyn Gregg Hill of Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, Oklahoma with him on the briefs) for Defendant - Appellant.

A corrected copy of page one is attached.

Sincerely,

Patrick Fisher, Clerk of Court

By:    Keith Nelson
       Deputy Clerk

encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 28 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LEROY MCILRAVY; ALLEN LEE
MAHONEY; RICHARD E.
MASSMAN; ROBERT H. GRAY,

      Plaintiffs - Appellees,

v.

KERR-MCGEE COAL
CORPORATION, a Delaware
corporation,

      Defendant - Appellant.

No. 98-8091

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 93-CV-302)**

---

Gregory A. Eurich, Holland & Hart, Denver, Colorado (with Marcy G. Glenn and
Megan C. Bertron of Holland & Hart and Carolyn Gregg Hill of Andrews Davis
Legg Bixler Milsten & Price, Oklahoma City, Oklahoma with him on the briefs)
for Defendant - Appellant.

Stephen H. Kline, Kline & Jenkins, Cheyenne, Wyoming (with Kenneth E.
Barker, Quinn, Eiesland, Day & Barker, Belle Fourche, South Dakota with him on
the brief) for Plaintiffs - Appellees.

---

Before **TACHA**, **KELLY** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

This diversity case has been through two jury trials and is again before us on appeal. Some two years ago, this court considered the case and reversed the trial court's grant of partial summary judgment as to the plaintiffs' breach of contract claim. At a subsequent trial, judgment was entered for the plaintiffs, and the defendant, Kerr-McGee Coal Corporation ("KMC"), now appeals from the jury verdict awarding damages for breach of employment contract. We must determine whether the law of the case doctrine bars consideration of appellant's claimed error as having been decided implicitly in the previous appeal. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that the doctrine of law of the case bars consideration of the merits of KMC's claims and affirm.

## I

In 1992, KMC fired appellees Leroy McIlravy, Allen Lee Mahoney, Richard E. Massman, and Robert H. Gray, all salaried, supervisory employees, as part of a reduction in force ("RIF"). It allegedly did so without considering appellees' seniority at the company and without cause, in violation of the following RIF provision in KMC's 1976 and 1977 employee handbooks:

REDUCTIONS IN FORCE

If a job is eliminated or an operation reduced, the determination of the employee or employees to be demoted or laid off will be made on the basis of qualifications and seniority.

A.    Demotions

Demotions in a progression line required by reduction of force will generally be made in the reverse of the normal order of promotion. An employee demoted to a lower classification will carry back all earned classification seniority. Employees will, on the basis of qualifications and Classification Seniority, successively demote downward through the classifications of the affected progression line. An employee who is displaced from a progression line by this demotion procedure may only displace an employee with less Company Seniority who occupies either another entry level classification in a progression line or the lowest related non-progressional classification (s), provided the employee has the qualifications to perform the work of such classification.

B.    Layoffs

Layoffs will be made from the entry level classification in progression lines or from non-progressional classifications. An employee subject to being laid off from the higher rated non-progressional classification (s) may only displace an employee with less Company Seniority who occupies either an entry level job in a progression line or the lowest rated non-progressional classification (s), provided the employee has the qualifications to perform the work of such classification.

(III R. at 967-68.)

In 1993, appellees filed suit against KMC in United States District Court for the District of Wyoming, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel arising from the RIF. The district court granted summary judgment to KMC on all claims save the claim of promissory estoppel, the parties tried that claim, and a jury found for

KMC. On appeal, this court affirmed the jury verdict and the grant of summary judgment on appellees' claim of breach of the implied covenant of good faith and fair dealing, but reversed the grant of summary judgment on the breach of contract claim, finding there was a genuine issue of material fact as to whether KMC breached an employment contract with appellees. See McIlravy v. Kerr-McGee Corp., 119 F.3d 876 (10th Cir. 1997) ("McIlravy I").

> Specifically, McIlravy I held, inter alia, that the foregoing RIF provision
>
> indicates that [KMC] would take seniority into account in selecting employees for layoffs . . . [I]t can also reasonably be construed as representing that the company would make layoffs in order of seniority, if the conditions above were met. Plaintiffs contend that the company's selection of them for termination breached these representations. They have cited evidence that the company went strictly by performance rankings when it selected them for termination and that it gave no consideration at all to seniority. Under the circumstances, we agree with appellants that genuine issues of material fact exist as to whether [KMC] performed according to the representations in the handbook. Accordingly, the summary judgment in favor of defendant on the breach of contract claim must be reversed and remanded to the district court for further proceedings consistent with this opinion.

Id. at 881-82 (citation omitted).

On remand, a second jury rendered its verdict against KMC, awarding appellees total damages of $2,371,028 for breach of contract. KMC thereupon filed a motion for judgment as a matter of law, alleging that the RIF provision did not apply to salaried, supervisory employees and, even if it did, the RIF provision

was inapplicable and unenforceable under the circumstances of the present case. The district court denied KMC's motion, which led to this appeal.

## II

Before reaching the merits of KMC's claims of error, we must decide whether to bar them under the doctrine of law of the case.[1] "[T]he law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" United States v. Monsisvais, 946 F.2d 114, 115 (10th Cir. 1991) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1183 (10th Cir. 1995).

---

[1] We note that the law of the case doctrine, not issue preclusion, is applicable to this case.

> The doctrine of law of the case is similar to the issue preclusion prong of res judicata in that it limits relitigation of an issue once it has been decided. However, law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. Res judicata does not speak to direct attacks in the same case, but rather has application in subsequent actions.

Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999).

The enunciated rationales for the law of the case doctrine are compelling: The doctrine is "based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided," Gage v. General Motors Corp., 796 F.2d 345, 349 (10th Cir. 1986) (citations omitted), so avoiding both a wasteful expenditure of resources by courts and litigating parties and the gradual undermining of public confidence in the judiciary—in short, Dickens's Jarndyce v. Jarndyce syndrome. The promotion of judicial economy—a primary concern underlying the law of the case doctrine—requires that litigants be encouraged to present all available claims and defenses at the earliest opportunity. See id. ("The law of the case doctrine is a restriction self-imposed by the courts in the interests of judicial efficiency.") (citations omitted). The doctrine "also serves the purposes of discouraging panel shopping at the court of appeals level." Monsisvais, 946 F.2d at 116 (citing Heathcoat v. Potts, 905 F.2d 1161, 1164 (11th Cir. 1990)).

The doctrine is, however, "only a rule of practice in the courts and not a limit on their power." Id. (citing Messinger v. Anderson, 225 U.S. 436, 444 (1912)). We have recognized three "exceptionally narrow" grounds for departure from that rule of practice: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a

contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir.), cert. denied, 119 S. Ct. 242 (1998) (citing Monsisvais, 946 F.2d at 117).

## A

As noted, this court has considered once before appellees' ability to enforce the RIF provision of the handbooks in an appeal at the summary judgment stage of this litigation. See McIlravy I, 119 F.3d at 878-82. With regard to KMC's claim that the terms of the provision were "too vague and indefinite to permit enforcement," (Appellant's Br. at 39), in McIlravy I the panel summarized the appellants' claim as follows: "they contend the handbooks promised that any layoffs would be made in order of seniority. [They] argue that [KMC] breached [that] promise[]." Id. at 879. In response to that argument, the panel specifically held the RIF provision "indicates that [KMC] would take seniority into account in selecting employees for layoffs. . . . [I]t can also reasonably be construed as representing that the company would make layoffs in order of seniority, if the conditions above were met. . . . Under the circumstances, we agree with appellants that genuine issues of material fact exist as to whether [KMC] performed according to the representations in the handbook." Id. at 881-82. McIlravy I therefore expressly indicated that the "seniority" language of the RIF

provision was not unenforceably vague as a matter of law.  Barring one of the "exceptionally narrow" grounds for departure from the law of the case doctrine, discussed below, we will not revisit that decision.

KMC's claim that the RIF provision does not apply to salaried, supervisory employees like appellees is less straight-forward.  In this court's earlier decision, that issue was implicitly rather than explicitly decided.  In addition to finding there was a genuine issue of material fact as to whether KMC had breached a contract with plaintiffs based on the RIF provision, McIlravy I held that "[t]aken as a whole, the . . . handbooks are sufficiently ambiguous that they could be said to have reasonably created expectations on plaintiffs' part that the company had promised not to discharge employees absent cause for the dismissal." Id. at 880. The foregoing language indicates that, at that time, the panel found the RIF provision applicable to plaintiffs, whose status as salaried, supervisory employees was a matter of record in the first appeal.[2]  Thus, in McIlravy I, with the knowledge that plaintiffs were supervisory employees, this court decided that

---

[2]  For example, the district court, on the first page of its order granting in part and denying in part KMC's motion for summary judgment, stated that McIlravy and his colleagues "worked their way up the employment ladder to supervisory positions which they held until they were terminated." McIlravy v. Kerr-McGee Coal Corp., No. 93-CV-0302-B (D. Wyo. June 22, 1994) (emphasis added).  McIlravy I also stated that "[p]laintiffs were at the bottom of the rankings for supervisors in their respective departments.  The company retained some supervisors who had less seniority than the plaintiffs but who had better performance rankings." McIlravy I, 119 F.3d at 879 (emphasis added).

plaintiffs presented a genuine issue of material fact as to whether KMC breached the terms of the employment contract as set forth in the RIF provision.

Under the law of the case doctrine, there are several circumstances under which an issue may be implicitly resolved by a prior appeal: "(1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated." Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9, 10 F.3d 700, 707 (10th Cir. 1993), modified on other grounds sub nom. Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d 1078 (10th Cir. 1994) (en banc). We explained in Guidry that "there is little guidance in the law to explain the circumstances under which an issue may be implicitly resolved. The recited factors are not intended to be exhaustive." Id. at 707 n.5; see also Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1410 (10th Cir. 1996) ("[L]aw of the case applies to issues that are resolved implicitly as well as to those decided explicitly.").[3]

---

[3] Our application of the law of the case doctrine to implicitly decided issues is consistent with the law of our sister circuits. See, e.g., Kansas Pub. Employees Retirement Sys. v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C., 114 F.3d 679, 687 (8th Cir. 1997); Alberti v. Klevenhagen, 46 F.3d 1347,

(continued...)

Applying <u>Guidry</u>'s analysis to the present case, a determination as to the applicability of the RIF provision to appellees was "a necessary step" in the earlier panel's decision, <u>Guidry</u>, 10 F.3d at 707, because there would be no genuine issue of material fact as to whether KMC breached that contract term if appellees were not party to the contract. Similarly, resolving the RIF applicability issue as barring the breach of contract claim "would abrogate the prior decision and so must have been considered in the prior appeal," <u>id.</u>, because deciding appellees were not party to the contract would have caused the earlier panel to affirm rather than reverse the grant of summary judgment to KMC.

In <u>Martinez v. Roscoe</u>, 100 F.3d 121 (10th Cir. 1996), we faced a procedural history analogous to that of the present appeal. In <u>Martinez</u>, the appellants challenged the issuance by the district court of a second permanent injunction, based on their violation of a prior permanent injunction, against "interfering with the management" of apartments owned by the appellants. <u>Id.</u> at 122. Their appeal challenged the issuance of the subsequent permanent injunction

    ³(...continued)
1351 n.1 (5th Cir. 1995); <u>Griffin v. Michigan Dep't of Corrections</u>, 5 F.3d 186, 190 (6th Cir. 1993); <u>Day v. Moscow</u>, 955 F.2d 807, 812 (2d Cir. 1992); <u>Exxon Corp. v. United States</u>, 931 F.2d 874, 877 (Fed. Cir. 1991); <u>Key v. Sullivan</u>, 925 F.2d 1056, 1060 (7th Cir. 1991); <u>Wheeler v. City of Pleasant Grove</u>, 746 F.2d 1437, 1440 (11th Cir. 1984); <u>Liberty Mutual Ins. Co. v. EEOC</u>, 691 F.2d 438, 441 (9th Cir. 1982); <u>Walston v. School Bd. of Suffolk</u>, 566 F.2d 1201, 1205 (4th Cir. 1977).

on two grounds.  See id. at 122-23.  The appellants had raised, and the district court had rejected, the first ground during the first injunction proceeding.  See id.  The Martinez court held that the district court's earlier decision had not been "challenged by appeal, [and] [a]ccordingly, [the appellants] are barred by the doctrine of law of the case from raising the issue in this appeal."  Id. at 123.  The appellants had not previously raised their second ground, namely, that the appellees had no right to bring the cause of action that culminated in the issuance of the permanent injunctions.  See id.  Nevertheless, the Martinez court held that

> [t]he district court's determination that plaintiffs were entitled to maintain this action was integral to the [issuance of the first] permanent injunction. [The appellants] did not appeal that order.  Accordingly, [they] now are barred by the doctrine[] of . . . law of the case from challenging [appellees'] ability to maintain this action.  The district court's [subsequent] permanent injunction is, therefore, affirmed.

Id. (citations omitted).  The Martinez court thus refused, on the basis of the law of the case doctrine, to examine the merits of the questions, one explicitly and one implicitly, decided at a prior stage of the litigation.

Similarly, in the present case a prior panel of this court expressly settled the enforceability of the RIF provision in McIlravy I.  The applicability of the RIF provision—a determination that the provision applied to plaintiffs as salaried, supervisory employees—was implicit in and "integral to" McIlravy I's explicit holding.  Id.  Under our precedent in Martinez, we apply the law of the case doctrine to bar KMC's claims.

- 11 -

**B**

We next ask whether KMC meets any of the three "exceptionally narrow" grounds for departure from the law of the case doctrine. Alvarez, 142 F.3d at 1247 (citing Monsisvais, 946 F.2d at 117). First, we are not confronted with substantially different evidence than that on record in McIlravy I: KMC's claims in both appeals arise out of the same contractual language, and plaintiffs' status as salaried, supervisory employees was on the record. See id. Second, the controlling law in this case has not changed.[4] See id. Finally, we are not persuaded that the terms of the two handbooks are so unequivocal that enforcement of the interpretation given the handbooks by the jury would be "clearly erroneous and work a manifest injustice" to the parties. Id.

---

[4] Appellants cite the Wyoming Supreme Court's recent decision in Bouwens v. Centrilift, 974 P.2d 941, 944 (Wyo. 1999), for the proposition that "an employer's course-of-dealing and handbook provisions which relate to disciplinary actions and procedures are irrelevant to an analysis of a layoff termination." Id. (citing Rompf v. John Q. Hammons Hotels, Inc., 685 P.2d 25, 29 (Wyo. 1984)). However, the Bouwens court indicated that the Rompf holding was confined to cases in which a handbook "did not contain a layoff provision." Id. In the present case, there was indeed a layoff provision in the handbooks' RIF section.

**III**

KMC also claims that the district court should have granted its motion for judgment as a matter of law because the handbooks do not include procedures for final terminations during RIFs, but only for temporary "layoffs," and appellees here were permanently "terminated" rather than "laid off."

"We review de novo the district court's denial of a litigant's motion for judgment as a matter of law filed pursuant to Fed. R. Civ. P. 50(b). We will reverse such a ruling only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Kinser v. Gehl Co. , 184 F.3d 1259, 1267 (10th Cir. 1999), cert. denied , No. 99-1608, 2000 WL 48811 (Jan. 24, 1999) (citation and quotation omitted).

In construing the parties' contractual intent under Wyoming law, courts are required to give contractual terms their plain and ordinary meaning. See Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc. , 52 F.3d 901, 903 (10th Cir. 1995). In the present case, an inquiry into the plain meaning of the term "layoff" reveals that that term can denote either a permanent or a temporary termination of employment. The term is variously defined as "[a] termination of employment at the will of employer. Such may be temporary . . . or permanent," Black's Law Dictionary 888 (6th ed. 1990), and "the act of laying off an employee or

- 13 -

workforce," to wit, "to cease to employ (a worker) usu[ally] temporarily," Webster's Ninth New Collegiate Dictionary 679 (1991).

Because the term "layoff" may denote either a permanent or temporary termination of employment, that term is ambiguous in the present case. We cannot say here that "the evidence points but one way and is susceptible to no reasonable inferences supporting" appellees' position. Kinser, 184 F.2d at 1267; cf. Emulsified Asphalt, Inc. v. Transportation Comm'n, 970 P.2d 858, 864 (Wyo. 1998) (citing Mountain View/Evergreen Improvement and Serv. Dist. v. Casper Concrete Co., 912 P.2d 529, 532 (Wyo.1996)) ("Ambiguous contracts are construed against the drafter."); Goodman v. Kelly, 390 P.2d 244, 247 (Wyo. 1964) ("[I]n case of doubt as to the meaning of an instrument, the doubt will be resolved against the scrivener . . . ."). We agree with the district court that it was appropriate to submit the breach of contract claim to the jury.

## IV

The judgment of the district court is AFFIRMED.