**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**February 16, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

GRYNBERG PRODUCTION
CORPORATION; TRANSWORLD
RESOURCES CORPORATION,

        Plaintiff – Appellant,

v.

SUSMAN GODFREY, L.L.P.,

        Defendant - Appellee.

No. 10-1248
(D.C. No. 1:98-CV-00630-WYD-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

Grynberg Production Corporation (Grynberg) appeals from the district court's

denial of its motion to stay enforcement of a judgment and to compel arbitration.[1] The

district court concluded, *inter alia*, that the current issues raised by Grynberg were barred

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id*.

[1] Transworld Resources Corporation is also an appellant in this case. For ease of reference, we refer solely to Grynberg.

by the law of the case doctrine.  We agree and affirm.

## FACTUAL BACKGROUND

This case has a long and tortured history.  A distilled version is sufficient for our purposes.

A.      Grynberg's Fee Agreement with Susman

Grynberg became involved in a dispute with British Gas, another oil and gas company, over rights to oil and gas reserves in the Republic of Kazakhstan.  It contacted the law firm Susman Godfrey, L.L.P. (Susman) about representation "in pursuit of all claims [it] has against British Gas."  (R. Vol. 1 at 18.)  On October 5, 1992, after two months of negotiation, Grynberg entered into a contingency fee agreement (Fee Agreement) with Susman.[2]  Under the Fee Agreement, Grynberg agreed to pay Susman 30% "of the sum recovered by settlement or judgment."  (R. Vol. 1 at 19.)  The fee was subject to caps based on when the lawsuit was resolved.  Relevant here, the Fee Agreement capped fees at $50 million if the case settled within one year after the action was filed.  The Fee Agreement stated the litigation would be supervised by Stephen D. Susman or H. Lee Godfrey (both partners in the firm) and that either or both would act as lead counsel at any trial.  It also contained an arbitration clause requiring "[a]ny disputes arising under this letter agreement [to] be determined under Texas law and be submitted to arbitration . . . and the arbitrator's decision will be binding, conclusive and nonappealable."  (R. Vol. 1 at 26.)

---

[2] Grynberg was represented by other counsel in negotiating the Fee Agreement.

B.    Grynberg's Settlement with British Gas

Susman filed suit on Grynberg's behalf against British Gas in Texas state court on October 13, 1992. British Gas removed the action to federal court. After protracted proceedings, Susman secured the state forum, which it considered crucial to Grynberg's success. In the meantime, British Gas made settlement overtures. According to Grynberg, it made two wholly inadequate offers, both of which Susman encouraged Grynberg to accept.[3] Grynberg refused and, having apparently lost faith in Susman, retained new counsel. Settlement negotiations with British Gas continued without Susman's involvement.

The negotiations were soon successful, resulting in a Settlement Agreement in July 1993. The Settlement Agreement required British Gas to pay Grynberg (1) $50 million—$3 million to be paid up front with the remainder to be paid in 40 quarterly installments of $1,175,000; (2) 15% of British Gas's net profits from oil and gas production in Kazakhstan; and (3) 15% of the net proceeds from any sale of British Gas's interests in Kazakhstan. It also called for all disputes between Grynberg and British Gas to be resolved by arbitration in Canada.

After the Settlement Agreement was completed, a dispute arose between British Gas and Grynberg regarding its interpretation. Susman successfully represented Grynberg against British Gas's claims and in 1995 the parties entered into another, more detailed, Settlement Agreement.

---

[3] For what it is worth Susman disputes the existence of the first offer.

C.    Arbitration Between Grynberg and Susman

British Gas paid Grynberg the "up front" $3 million in 1995. Grynberg in turn paid Susman 30% of that amount ($900,000). However, when Grynberg received the first quarterly payment in January 1998, it refused to pay any portion to Susman. Instead, in March 1998, it filed suit against Susman in Colorado state court alleging, among other things, (1) the Fee Agreement was unenforceable because it resulted in a grossly excessive, unconscionable, and unreasonable fee and (2) in any event, Susman had breached the Fee Agreement or had been unjustly enriched because it had failed to negotiate and draft the Settlement Agreement as the Fee Agreement required. Susman removed the action to federal court and filed a motion to compel arbitration as provided by the Fee Agreement. Grynberg opposed the motion, arguing the arbitration clause was invalid and contrary to public policy and, in any event, its claims against Susman were not within the scope of the arbitration clause. The district court granted the motion to compel and stayed the action to permit arbitration.

After a three-day hearing, the arbitrator determined the contingency fee provision in the Fee Agreement was not unreasonable under Texas law.[4] However, he found the original Settlement Agreement with British Gas was not negotiated by Susman as the Fee Agreement contemplated and determined Grynberg was entitled to a $150,000 credit, which represented the costs Grynberg incurred in hiring new counsel to negotiate and

---

[4] The arbitrator was Arlin M. Adams, a former judge on the United States Court of Appeals for the Third Circuit.

draft the agreement with British Gas.[5]  The arbitrator also found Grynberg had specifically bargained for either Mr. Susman or Mr. Godfrey to supervise the litigation with British Gas, which neither did.  As a consequence, he reduced the fee percentage--from 30% to 28%--and reduced the $50 million fee cap to $46,666,666.

Susman moved for the district court to confirm the arbitrator's award and for entry of final judgment.  Grynberg opposed the motion and filed a cross-motion to vacate the award.  He again claimed the Fee Agreement was invalid and therefore the arbitrator exceeded his powers in issuing an award based on it.  According to Grynberg, the question of the Fee Agreement's validity was not submitted to the arbitrator but rather was reserved for decision by the district court.  In the alternative, Grynberg claimed the arbitration award must be set aside because its grossly excessive attorneys' fees violated public policy.  On January 27, 2000, the court granted Susman's motion, denied Grynberg's cross-motion and adopted the arbitrator's award as the final judgment.  Grynberg appealed.  We affirmed on May 7, 2001.

D.    Grynberg's Motion for Relief from Payment and Susman's Motion to Enforce
      Judgment—the 2007 Proceedings

In April 2005, British Gas sold part of its interest in Kazakhstan, requiring it to pay Grynberg a portion of the net sale proceeds.  It paid Grynberg and Grynberg paid Susman its percentage of the proceeds.  But, believing it had been underpaid, Grynberg initiated an arbitration proceeding against British Gas in Canada.  In March 2006, British

---

[5] To no avail, Susman claimed Grynberg never requested its assistance in negotiating the British Gas settlement.

Gas counterclaimed, arguing it had overpaid Grynberg between $1-$6 million.

Over a year later, in October 2007, Grynberg was set to receive the last of the quarterly payments from British Gas, but it did not want to pay Susman a percentage of those proceeds because of the uncertainty surrounding the Canadian arbitration.[6] It filed with the district court a motion for relief from payment based on an unforeseen "change of circumstances," i.e., the Canadian arbitration proceedings. (R. Vol. 4 at 1313.) Noting British Gas's overpayment claim, Grynberg argued Susman would have been effectively overpaid if Susman obtained its share of the final quarterly payment but Grynberg was later required to disgorge overpayments to British Gas. Such a result, it said, would be "inequitable." (R. Vol. 4 at 1314.) According to Grynberg, the unfairness would be exacerbated because it had to incur substantial attorneys' fees in the Canadian arbitration in order to obtain those proceeds and Susman had refused its request for legal assistance. Grynberg wanted to be relieved from making all future payments to Susman until its dispute with British Gas was resolved. Grynberg did not, however, identify why or how the court's January 27, 2000, final order confirming the arbitration decision should be revisited. Nor did it request a referral to the arbitrator to consider collateral relief.[7]

------

[6] Grynberg had paid Susman a percentage of all quarterly payments it had received from British Gas since 1998.

[7] In *Shell Oil Co. v. CO₂ Comm., Inc.*, we held that an arbitration clause which required arbitration of all "claims" as well as "any and all disputes" arising from the parties' agreement encompassed not only the merits of a claim but any defenses thereto. 589 F.3d 1105, 1109 (10th Cir. 2009). Therefore, we concluded the district court had "correctly determined that the res judicata effect of [a previous arbitration decision] is an arbitrable issue that should not be decided by a court." *Id.* However, in *MACTEC, Inc. v. Gorelick,* the arbitration clause, like the one in *Shell Oil*, required "all disputes," except

Susman opposed Grynberg's motion, which it interpreted as a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure, and moved to enforce the judgment. Susman claimed Grynberg had never asked for its assistance in the Canadian arbitration and it had been kept largely in the dark concerning that matter. It did, however, offer to participate in the arbitration, an offer Grynberg refused. As to Grynberg's contention about possibly being required to repay funds to British Gas, Susman contended such a contingent liability was not reason to offset or delay Grynberg's payment obligations to it.

The motions were referred to a magistrate judge, who construed Grynberg's filing as a Rule 60(b) motion.[8] The magistrate recommended denial because Grynberg's motion was untimely or, in the alternative, it was not entitled to relief because (1) the motion was based on speculation (Grynberg might be found to have been overpaid by British Gas) and (2) at the first arbitration Grynberg should have anticipated the potential future need for collection efforts against British Gas and asked for an appropriate remedy.[9] In light of these conclusions, the magistrate also recommended granting Susman's motion to enforce the judgment. On March 6, 2009, the district court adopted

those expressly excluded, to be arbitrated. 427 F.3d 821, 824 (10th Cir. 2005). Nevertheless, we decided the plaintiff's declaratory judgment complaint was barred by a previous arbitration award (or the court's order confirming the award) under the doctrine of *res judicata*. *Id.* at 832; *see also Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1143 1147-48 (10th Cir. 2007) (deciding preclusive effect of arbitration award but arbitration clause only required arbitration of "claims").

[8] No other method of relieving a party of an otherwise final judgment was discussed.

[9] But see supra n.7.

the magistrate's recommendations over Grynberg's objections and entered an order denying Grynberg's Rule 60(b) motion and granting Susman's motion to enforce (2009 order), thus ending the "2007 proceedings." Grynberg did not appeal.

E.      Susman's Motion to Enforce Judgment and Grynberg's Motion to Stay and Compel Arbitration

Five months later, the parties again were in court due to Grynberg's failure to pay. Susman learned that Grynberg had received a payment (apparently a net profits payment) from British Gas and had not paid Susman its percentage share. It moved to enforce the judgment. In response, Grynberg renewed its old argument–Susman was not entitled to a percentage of the net profits payment because it had not assisted Grynberg in the Canadian arbitration as it was required to do under the Fee Agreement and law. It moved to stay further proceedings in the district court and compel arbitration of that issue, saying it had not been determined by the prior arbitration award or previous court orders.

By order dated May 20, 2010, the district court granted Susman's motion to enforce and denied Grynberg's motion to stay and compel arbitration. It concluded Susman was entitled, under the court's final judgment confirming the arbitration award (entered January 27, 2000), to its percentage share of the payments Grynberg received from British Gas and Grynberg had set forth no grounds justifying relief from that judgment. It rejected Grynberg's assertion that Susman's entitlement to fees, which it did not assist in collecting, was a new issue. In the arbitration Grynberg had informed the arbitrator that British Gas could, in the future, seek to avoid its obligations under the Settlement Agreement. Therefore, "the arbitrator was . . . on notice that there may be

- 8 -

future payment disputes between Grynberg and [British Gas]. The arbitration ruling presumably took that into account." (R. Vol. 7 at 2087.)

The court also concluded the issue regarding Susman's failure to help collect from British Gas was raised in the 2007 proceedings (in Grynberg's motion for relief from obligation to pay) and rejected by the court. Primarily it rested its decision on the law of the case doctrine, which, it concluded, prevented Grynberg from resurrecting the issue. Significantly, it also concluded (1) Grynberg waived the right to arbitrate the issue as his request was untimely, and (2) the issues could have been asserted in the initial arbitration and/or Grynberg could have sought arbitration of these issues in 2007 when it argued Susman's right to fees and the amount thereof should be reduced due to the Canadian arbitration. (Emphasis ours.)

In the end, the court concluded:

Grynberg is using the current dispute with [British Gas] over the settlement agreement to manufacture yet another excuse to withhold payments from Susman . . . .

I will not sanction Grynberg's continued attempts to litigate or get out of payments it owes to Susman . . . pursuant to the Final Judgment . . . . This case has now been closed almost nine (9) years, the parties have had their opportunities to litigate the enforceability of the Final Judgment . . . and this case must come to an end.

(R. Vol. 7 at 2090-91.)

## DISCUSSION

Grynberg argues the district court erred in denying its motion to stay and compel arbitration, setting forth a number of reasons. Nevertheless, it admits the focal point of this appeal is whether the current issues were previously decided by the arbitrator or the

district court in its 2009 order wherein the court resolved the "2007 proceedings." It claims the current issues are different from those previously decided and therefore are not precluded. This argument is inventive, but not compelling. The current issues were decided in the 2009 order, from which no appeal was taken. They are thus barred by the law of the case doctrine.[10]

Under the law of the case doctrine, "[a] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Concrete Works of Colo., Inc. v. City and Cnty. of Denver*, 321 F.3d 950, 992 (10th Cir. 2003) (quotation omitted). This rule applies even when the party failed to appeal from the earlier final order deciding the issue. *See Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996).[11]

---

[10] Grynberg argues the district court erred in deciding the current issues were precluded by the arbitration award as that issue should have been resolved by the arbitrator. *See supra* n.7. We need not address this argument as we conclude the district court correctly determined the current issues were "precluded" by its 2009 order. As Grynberg concedes, the preclusive effect of the court's 2009 order (as opposed to the arbitration award itself) is an issue for the court, not the arbitrator.

[11] But we have also suggested issue preclusion, rather than law of the case doctrine, applies when no appeal is taken from the earlier decision. *See In re Scrivner*, 535 F.3d 1258, 1266 (10th Cir. 2008). Since Grynberg did not appeal from the district court's 2009 order, it could be argued, under *Scrivner*, that issue preclusion, rather than law of the case, is the appropriate vehicle to dispose of this case. We think not.

Significantly, the law of the case doctrine does not require that the party actually have appealed from the earlier decision, only that it had the <u>opportunity</u> to appeal. *See Concrete Works of Colo., Inc.*, 321 F.3d at 992 ("A legal decision made at one stage of litigation, unchallenged in a subsequent appeal *when the opportunity to do so existed*,

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (quotations omitted). "The doctrine is based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued reargument of issues already decided," so as to avoid "both a wasteful expenditure of resources by courts and litig[ants] and the gradual undermining of public confidence in the judiciary." *Id.* at 1035 (quotations omitted). "The promotion of judicial economy . . . requires that litigants be encouraged to present all available

---

becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."). In deciding otherwise, *Scrivner* cited our decisions in *Concrete Works* and *Capps v. Sullivan*, 13 F.3d 350 (10th Cir. 1993). In those cases the party seeking to raise an issue failed to raise it in a previous appeal. Neither case, however, specifically held the law of the case doctrine applies only when an appeal is taken from the earlier decision. *Concrete Works of Colo.*, 321 F.3d at 992-93; *Capps*, 13 F.3d at 353.

More important, the *Scrivner* opinion specifically concluded a decision on the issue was unnecessary. 535 F.3d at 1266. The discussion in *Scrivner* is thus dicta, not binding on this panel. *See Bates v. Dep't of Corr. of State of Kan.*, 81 F.3d 1008, 1011 (10th Cir. 1996) ("[While] a panel of this Court is bound by a holding of a prior panel of this Court[,] [it] is not bound by a prior panel's dicta.") (emphasis added).

Finally, because the previous order alleged to have preclusive effect on the current issues (the 2009 order) was issued in this case, not some previous, separate case, the law of the case doctrine, rather than issue preclusion, applies. *See McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 n.1 (10th Cir. 2000) ("The doctrine of law of the case is similar to the issue preclusion prong of res judicata in that it limits relitigation of an issue once it has been decided. However, law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. Res judicata does not speak to direct attacks in the same case, but rather has application in subsequent actions.") (quotations omitted).

- 11 -

claims and defenses at the earliest opportunity." *Id.*

The doctrine, however, is not absolute. *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001). "We have routinely recognized that the law of the case doctrine is discretionary, not mandatory, and that the rule merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power." *Id.* (quotations omitted); *see also Been v. O.K. Industr., Inc.*, 495 F.3d 1217, 1224-25 (10th Cir. 2007) ("[T]he [law of the case doctrine] is a flexible one that allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power. That is, the doctrine is merely a presumption, one whose strength varies with the circumstances.") (citation and quotations omitted). A trial court could, with prudence as its guide, revisit any non-final order it later determined to have been improvidently entered. *See Been*, 495 F.3d at 1225 ("[D]istrict courts generally remain free to reconsider their interlocutory orders."); *see also Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) (stating a district court has "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment"). On the other hand, final orders (at least in the sense that they are appealable) should be revisited most reluctantly.

"If the original ruling was issued by a higher court, a district court should depart from the ruling only in exceptionally narrow circumstances." *Been*, 495 F.3d at 1225. The same is true if the earlier ruling was issued by a trial court and no appeal was taken even though the opportunity to appeal existed. *See Concrete Works of Colo., Inc.*, 321 F.3d at 992. The three exceptions to the law of the case doctrine are "exceptionally

- 12 -

narrow." *Concrete Works of Colo.*, 321 F.3d at 993 (quotations omitted). They are: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* (quotations omitted). Our review of the district court's application of the law of the case doctrine is *de novo*. *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011).

Grynberg does not claim an exception to the rule but rather says that the current issues were not raised in the 2007 proceedings or decided in the 2009 order. In particular, it says the current issues address only Susman's claim to a portion of the net profits and net proceeds payments Grynberg receives from British Gas—payments which are at issue in the Canadian arbitration and which Susman has done nothing to help collect. According to Grynberg, the current issues are (1) whether Susman is obligated under the Fee Agreement to aid in collecting these payments and, if so, whether it has fulfilled that obligation (i.e., whether Susman breached the Fee Agreement); and (2) if Susman was required to collect the payments and failed to do so, whether it is, nevertheless, entitled to a portion of them. Grynberg asserts the only issue before the court in the 2007 proceedings concerned the last of the quarterly payments from British Gas and it simply asked that Susman's portion of that payment be suspended until British Gas's overpayment claim was resolved in the Canadian arbitration. Grynberg admits it referred to the fees it incurred as a result of the Canadian arbitration in the 2007 proceedings, but claims it did so only to underscore the unfair position it would be in if it were unable to withhold the last payment in the face of British Gas's overpayment claim.

Grynberg also emphasizes its 2007 motion was not based on Susman's breach of the Fee Agreement. Instead, the motion sought to enforce the Fee Agreement and judgment by seeking an order requiring Susman's fees to be calculated on a net basis, i.e., after setting off British Gas's overpayment claim and the costs Grynberg incurred in collecting from British Gas.

We are not persuaded by Grynberg's facile attempts to recast its prior arguments. At bottom they present a distinction without a difference. The current dispute concerns Grynberg's claim that Susman was obligated by the Fee Agreement to help collect the settlement proceeds from British Gas and because it had not done so, it was not entitled to its portion of those payments. Likewise, its 2007 motion claimed Susman was not entitled to its portion of the last quarterly payment and its future payments should be limited to 28% of Grynberg's net recovery because, *inter alia*, it had not helped to collect those payments from British Gas in the Canadian arbitration.

Contrary to Grynberg's argument, the 2007 proceedings did not concern only the last quarterly payment. While the 2007 motion initially sought to withhold Susman's portion of the last quarterly payment, its "prayer for relief" was not so limited, requesting "relief from *future payments* . . . until the dispute with [British Gas is resolved]." (Vol. 4 at 1314 (emphasis added).) Grynberg repeated that request in its reply: "[Grynberg] request[s] an Order that [it] be relieved from payment of the next [quarterly payment] due to [Susman] . . . *and* that [Susman] in the future be paid 28% of only [Grynberg's] actual net receipts from the settlement in accordance with Texas law." (R. Vol. 5 at 1535 (emphasis added).) And in his objections to the magistrate's recommendation, it again

requested "relief from *future* payments" until its dispute with British Gas was resolved. (R. Vol. 5 at 1628 (emphasis added).) The only future British Gas payments remaining at that time were for 15% of production and 15% of the proceeds derived from any sale of British Gas' interest in the Kazakhstan venture. Therefore, both the 2007 proceedings and the current dispute involve Grynberg's attempt to be relieved from having to pay Susman its share of the British Gas payments because Susman was not assisting Grynberg in collecting those payments.

We also reject Grynberg's claim that the current issues and those raised in the 2007 proceedings are different because it sought to enforce the Fee Agreement in the 2007 proceedings but now alleges Susman breached the Fee Agreement. Although Grynberg did not specifically allege Susman's breach of the Fee Agreement in the 2007 proceedings, it did, in fact, seek relief from having to pay Susman its portion of the payments Grynberg received from British Gas because Susman did not help collect those payments. Despite differences in form, the substance of the 2007 and current issues is the same.

In 2009, the court rejected Grynberg's arguments that it was entitled to a setoff for any payments owed to British Gas or for expenses incurred in the Canadian arbitration with British Gas.[12] Therefore, the current issues were decided in 2009. The denial of a

_____

[12] In making his recommendation to deny Grynberg's 2007 motion, the magistrate determined Grynberg could have anticipated the potential need for collection efforts and expenses at the time it entered into the Fee Agreement or during the arbitration yet failed to take steps to protect its interests in the agreement or from the arbitrator. The district court agreed, concluding Grynberg could have requested the arbitrator give it the right to

- 15 -

Rule 60(b) motion challenging a final order is appealable.[13]  *See Stubblefield v. Windsor Capital Grp.*, 74 F.3d 990, 993 (10th Cir. 1996) ("We have jurisdiction under 28 U.S.C. § 1291 to reach the merits of an appeal from a denial of a Rule 60(b) motion, provided the ruling or judgment the Rule 60(b) motion challenged was a final decision of the district court.") (quotations omitted).  Because Grynberg did not appeal from the court's 2009 order when it had the opportunity to do so, the law of the case doctrine bars this round of litigation.

But assuming, *arguendo*, the district court did not expressly address the current issues in the 2009 order, it necessarily resolved them.  The law of the case doctrine applies to both issues explicitly resolved in a prior order and those necessarily resolved by implication.  *Copart, Inc. v. Admin. Rev. Bd.*, *U.S. Dep't of Labor*, 495 F.3d 1197, 1201 (10th Cir. 2007).

> Under the law of the case doctrine, there are several [non-exhaustive] circumstances under which an issue may be implicitly resolved by a prior [decision]: (1) resolution of the issue was a necessary step in resolving the earlier [dispute]; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior [decision]; and (3) the issue is so closely related to the earlier [decision] its resolution involves no additional consideration and so might have been resolved but unstated.

*McIlravy*, 204 F.3d at 1036.

The district court's refusal to suspend payment in its 2009 order demonstrates it

---

deduct future litigation expenses but chose not to do so.  We need not decide that issue and the complications it involves. *See supra* n.7.

[13] Grynberg's 2007 motion for relief from payment, which the district court construed as a Rule 60(b) motion, challenged the district court's January 27, 2007, order confirming the arbitration award.  The January 27, 2007, order was final and appealable; indeed, Grynberg appealed from that order.

necessarily decided Susman's failure to help collect from British Gas was not a basis for Grynberg to withhold payment. Moreover, the 2009 order not only denied Grynberg's motion for relief but also granted Susman's motion to enforce the judgment. The court could not have granted Susman's motion to enforce had it agreed with Grynberg's argument that Susman was not entitled to any portion of any payments that Susman did not help Grynberg collect from British Gas.

The need for application of that doctrine in this case is strong. Grynberg's repeated attempts to reframe and thereby relitigate decided issues are contrived. The words of the district court have resonance:

> This case has now been closed [twelve] years, the parties have had their opportunities to litigate the enforceability of the Final Judgment . . . and this case must come to an end.

(R. Vol. 7 at 2090-91.)

**AFFIRMED.** Susman's motion to summarily dismiss this appeal under Rule 27.2 of the Tenth Circuit Rules is **DENIED**. Susman's motion for an award of attorneys' fees and costs under Rule 38 of the Federal Rules of Appellate Procedure is **DENIED.**[14]

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[14] Rule 38 provides: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Grynberg's arguments are tedious, but not frivolous.