**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEVEN DOBBS; NAOMI DOBBS,

      Plaintiffs–Appellants–
      Cross-Appellees,

v.

ANTHEM BLUE CROSS AND BLUE
SHIELD, a Colorado Insurance Company,

      Defendant–Appellee–
      Cross-Appellant.

------------------------------

SOUTHERN UTE INDIAN TRIBE,

      Amicus Curiae.

Nos. 07-1398 and 07-1402

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 04-cv-02283-LTB)**

---

Shawn Mitchell, Broomfield, Colorado for the Appellants–Cross-Appellees.

John R. Mann, Kennedy Childs & Fogg, P.C., Denver, Colorado (Dean A. McConnell
with him on the brief) for Appellee–Cross-Appellant.

Thomas H. Shipps and Patricia A. Hall, Maynes, Bradford, Shipps & Sheftel, LLP, Durango, Colorado, Monte Mills, Legal Department, Southern Ute Indian Tribe, Ignacio, Colorado and Nancy Williams Bonnett, Pietzsch, Bonnett & Womack, P.A., Phoenix, Arizona, filed a brief on behalf of Amicus Curiae in favor of the Appellee-Cross-Appellant.

---

Before **HENRY**, Chief Circuit Judge, **BRISCOE**, and **LUCERO,** Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

This case comes to us on appeal for the second time. Steven and Naomi Dobbs' state law claims against Anthem Blue Cross and Blue Shield ("Anthem") were initially dismissed by the district court as preempted by the Employee Retirement Income Security Act ("ERISA"). On the first appeal, we vacated the court's disposition, holding that the Dobbs' claims would not be preempted if the insurance plan at issue qualified as a "governmental plan" under an amended statutory definition. We remanded to allow the district court to make that factual determination. On remand, the court determined that the plan qualified as a governmental plan under the amended definition, but dismissed the Dobbs' claims on the ground that the amended definition does not apply retrospectively.

We exercise jurisdiction under 28 U.S.C. § 1291. Because we decided on the first appeal that the amended definition applied to the Dobbs' claims, we reverse the district court's contrary conclusion and remand for fact-finding consistent with this opinion.

2

# I

In September 2004, the Dobbs filed suit against Anthem in Colorado state court. Their complaint alleged five state law causes of action arising from Anthem's alleged failure to comply with the terms of a health insurance policy issued to Steven Dobbs through his employer, the Southern Ute Indian Tribe. Anthem removed the action to the United States District Court for the District of Colorado and contemporaneously filed a motion to dismiss based on ERISA preemption.

The district court granted Anthem's motion in part. It dismissed four of the five claims, rejecting the Dobbs' argument that the statutory exception from ERISA preemption for "governmental plan[s]" included those established by tribal governments. However, the court initially declined to dismiss the Dobbs' fraud-as-to-benefits claim, reasoning that under Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co., 170 F.3d 985 (10th Cir. 1999), ERISA does not preempt state law claims predicated upon misrepresentations that induced plan participation. Id. at 991. The district court later reconsidered that ruling and dismissed the fraud claim as well. The Dobbs appealed.

While the first appeal was pending, Congress passed the Pension Protection Act of 2006 ("PPA"), Pub. L. No. 109-280, 120 Stat. 780. Section 906(a)(2)(A) of the PPA amends ERISA's exception for governmental plans to:

> include[] a plan which is established and maintained by an Indian tribal
> government . . . and all of the participants of which are employees of such
> entity substantially all of whose services as such an employee are in the
> performance of essential governmental functions but not in the performance

3

of commercial activities.

§ 906(a)(2)(A), 120 Stat. at 1051 (codified as amended at 29 U.S.C. § 1002(32)).

In deciding the Dobbs' first appeal, this court noted that "[t]he amendment's legislative history suggests that Congress expanded the definition to clarify the legal ambiguity regarding the status of employee benefit plans established and maintained by tribal governments." Dobbs v. Anthem Blue Cross & Blue Shield, 475 F.3d 1176, 1178 (10th Cir. 2007) [hereinafter Dobbs I]. We recognized, however, that the amended definition of "governmental plan" may not cover the Dobbs' plan "[b]ecause the amended provision makes a distinction between 'essential governmental functions' and 'commercial activities.'" Id. We accordingly remanded to the district court to engage in the necessary factual analysis, concluding that "[i]f the Dobbses' benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem." Id. at 1179.

On remand, the district court found that "the Dobbses' plan meets the new definition of a governmental plan under ERISA, as amended." However, it ruled that Congress intended § 906(a)(2)(A) of the PPA to apply only prospectively. It further rejected arguments that either the mandate rule or the law of the case doctrine required it to apply the amended definition of governmental plan to the events at issue. It thus reiterated its conclusion that ERISA preempted the Dobbs' claims. This appeal followed.

4

## II

## A

We review de novo a district court's dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Dias v. City & County of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009). ERISA preempts state law claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, it expressly exempts from preemption claims related to "governmental plan[s]" as defined in § 1002(32). See § 1003(b)(1). At the time of the events relevant to the Dobbs' claims, § 1002(32) defined "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." § 1002(32) (2002). Section 906(a)(2)(A) of the PPA, however, amended the definition of governmental plan to include certain plans established by tribal governments. See § 906(a)(2)(A), 120 Stat. at 1051. In this appeal, the Dobbs do not dispute that their insurance plan is an employee benefit plan within the meaning of ERISA or that four of their five claims "relate to" that plan for ERISA purposes.[1] They argue only that the amended definition of governmental plan should apply to the events at issue, even though they occurred before Congress amended the statute.

---

[1] The Dobbs contend their fraud-as-to-benefits claim is not preempted under Woodworker's, 170 F.3d at 989-91. We address that contention in Part III, infra.

5

**B**

We must first determine whether <u>Dobbs I</u> decided that § 906 of the PPA applied

retrospectively. If so, we are bound by that decision. <u>In re Smith</u>, 10 F.3d 723, 724 (10th

Cir. 1993). Moreover, if the first appeal decided the issue then the district court was

bound by its determination under the law of the case doctrine, <u>see</u> <u>Homans v. City of</u>

<u>Albuquerque</u>, 366 F.3d 900, 904 (10th Cir. 2004), and under the general rule that a

district court is bound by decisions made by its circuit court.

The law of the case doctrine provides that "when a court decides upon a rule of

law, that decision should continue to govern the same issues in subsequent stages in the

same case." <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983). "The doctrine is based on

sound public policy that litigation should come to an end and is designed to bring about a

quick resolution of disputes by preventing continued re-argument of issues already

decided" and to discourage forum-shopping by litigants. <u>McIlravy v. Kerr-McGee Coal</u>

<u>Corp.</u>, 204 F.3d 1031, 1035 (10th Cir. 2000) (quotation omitted). Thus "the decision of

the appellate court establishes the law of the case and ordinarily will be followed by both

the trial court on remand and the appellate court in any subsequent appeal." <u>Id.</u> at 1034.

The district court apparently concluded that the <u>Dobbs I</u> retrospectivity holding

was not law of the case because the panel did not expressly reach the preemption issue.

However, the law of the case doctrine applies to "issues previously decided, either

explicitly or by necessary implication." <u>Guidry v. Sheet Metal Workers Int'l Ass'n,</u>

6

Local No. 9, 10 F.3d 700, 705 (10th Cir. 1993) (citation omitted). An issue may be implicitly resolved by a prior appeal in three circumstances:

> (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated.

McIlvray, 204 F.3d at 1036 (quotation omitted).

In Dobbs I, we decided by necessary implication that § 906 of the PPA applies retrospectively. First, resolution of the issue was a necessary step in resolving the earlier appeal. Noting that Congress had altered the definition of "governmental plan" after the resolution of proceedings in the district court, Dobbs I, 475 F.3d at 1177-78, we determined that the Dobbs' plan might qualify as a governmental plan under the new language but remanded to the district court to engage in a "fact-specific analysis of the plan at issue," id. at 1178. We concluded that "[i]f the Dobbses' benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem." Id. at 1179.

By expressly remanding only the fact-specific analysis and concluding that this analysis alone would determine if ERISA preempted the Dobbs' claim, Dobbs I necessarily decided that the new language of the PPA applied to those claims.[2] Had we

---

[2] The dissent contends that our previous decision directed the district court not only to conduct the fact-specific analysis, but also to "consider in the first instance

Continued . . .

not made that determination, there would be no logical reason for us to remand only the

fact-specific analysis; such analysis becomes relevant and determinative only if § 906 of

the PPA applies retrospectively.[3] Thus, deciding the retrospectivity question was a

"necessary step in resolving the earlier appeal." McIlvray, 204 F.3d at 1036 (quotation

omitted).

_____

whether state or federal law applied in light of the PPA." (Dissenting Op. 4-5.) To the
extent the dissent is asserting that we remanded the retrospectivity question, it is
incorrect. We instructed the district court to consider whether ERISA preempted the
Dobbs' state law claims applying the amended definition of governmental plan. See
Dobbs I, 475 F.3d at 1178 ("Based on the Dobbses' complaint, we do not have enough
information to determine whether the benefit plan meets the requirements of § 1002(32)
and therefore remand the case to the District Court for consideration in light of the
amended definition." (emphasis added)); id. at 1179 ("If the Dobbses' benefit plan meets
the new definition of governmental plan under § 1002(32), ERISA will not preempt their
state-law causes of action against Anthem." (emphasis added)). We did not issue a broad
mandate to reconsider our determination that the PPA applies retrospectively.

Contrary to the dissent's assertions, our present opinion does not rely exclusively
on a single sentence from the prior panel opinion to reach this conclusion. Although our
analysis does focus on the prior panel's explicit directive to the district court, our
interpretation considers and is consistent with all the language in the prior decision. In
contrast, the dissent's interpretation is plainly inconsistent with the prior panel's express
directive and its remand to conduct the fact-specific analysis.

[3] The dissent asserts that the statement, "If the Dobbses' benefit plan meets the
new definition of governmental plan under § 1002(32), ERISA will not preempt their
state-law causes of action against Anthem," 475 F.3d at 11179, is "best understood as
dicta" and thus not subject to the law of the case doctrine. (Dissenting Op. 4.) Under the
dissent's reading, Dobbs I "explicitly did not reach the preemption issue." (Id.)
Like the district court, the dissent conflates § 906's retrospectivity with the fact-
bound question of whether the Dobbs' plan qualifies as a governmental plan under the
new definition of that term. We answered the first question in the affirmative, remanding
only the fact-based analysis "to the District Court for consideration in light of the
amended definition." Dobbs I, 475 F.3d at 1178.

8

Second, the panel decided that § 906 applies retrospectively by necessary implication because a contrary "resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal."  McIlvray, 204 F.3d at 1036 (quotation omitted).  To reiterate, we held in the prior appeal that "[i]f the Dobbses' benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem."  Dobbs I, 475 F.3d at 1179.  The district court found that the Dobbs' plan meets the new definition, but held ERISA preempts their claim.  In doing so, it directly contravened the instruction from Dobbs I and thus abrogated that decision.[4]

## C

The Tenth Circuit recognizes three "exceptionally narrow" circumstances in which the law of the case doctrine does not apply:  "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice."  McIlravy, 204 F.3d at 1035

---

[4] The dissent disagrees with our determination that the district court abrogated the Dobbs I decision, concluding that the "the district court did what we directed it to do—it considered whether federal law applied in light of the enactment of the PPA." (Dissenting Op. 5.)  But, as discussed in footnotes 2 and 3, supra, Dobbs I did not remand that broad question to the district court.  Rather, it instructed the district court that ERISA will not preempt the Dobbs' claims "[i]f the Dobbses' benefit plan meets the new definition of governmental plan under § 1002(32)."  475 F.3d at 1179.  By ignoring this mandate, the district court abrogated the prior panel decision.

9

(internal quotation omitted).  None apply here:  No new evidence on the issue was presented to the district court, and there has not been a contrary applicable decision.

We further conclude that the prior panel's decision was not clearly erroneous.[5] Anthem correctly argues that we presume an amendment does not apply retrospectively absent an indication of contrary intent by Congress.  See Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994).  In determining whether a statute applies retrospectively, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach."  Id. at 280.  If not, we ask whether applying the statute to the events at issue would have retroactive effects.  Id.  "Statutes are disfavored as retroactive when their application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'"  Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37 (2006) (quoting Landgraf, 511 U.S. at 280).  "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result."  Landgraf, 511 U.S. at 280.

Under Landgraf, we first look to whether Congress has expressly prescribed the

---

[5] We question whether we may permissibly endorse a district court order that rejects a prior panel decision as clearly erroneous.  See In re Smith, 10 F.3d at 724 ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.").  However, because the Dobbs I holding was not clearly erroneous, we need not attempt to reconcile McIlravy and In re Smith.  The dissent does not attempt to distinguish In re Smith, but appears willing to ignore a prior panel decision as clearly erroneous.  (See Dissenting Op. 6-7 & n.3.)

proper reach of § 906. Congress has given contradictory indications. On the one hand, § 906(c) states that "[t]he amendments made by this section shall apply to any year beginning on or after the date of the enactment of this Act." 120 Stat. at 1052. However, the Dobbs persuasively argue that this provision is merely intended to distinguish § 906 from numerous other sections of the PPA that became effective beginning at subsequent "plan years," and thus does not address the issue of retrospectivity at all. See, e.g., PPA § 101(d), 120 Stat. at 789; PPA § 103(c), 120 Stat. at 816; PPA § 110(e), 120 Stat. at 820.

Moreover, § 906(b) states that it is merely a "clarification" rather than a substantive change in the law—seemingly contradicting § 906(c). Although we have acknowledged that it is "hazardous . . . to assume from the enactment of a 'clarifying' amendment that Congress necessarily was merely restating the intent of the original enacting Congress," Fowler v. Unified Sch. Dist., No. 259, 128 F.3d 1431, 1436 (10th Cir. 1997), a true clarification applies retrospectively, see, e.g., United States v. Aptt, 354 F.3d 1269, 1276 (10th Cir. 2004) ("[A] subsequent amendment to the Guidelines can sometimes be given retroactive effect if the changes are clarifying rather than substantive." (quotation omitted)); Andrews v. Deland, 943 F.2d 1162, 1172 n.7 (10th Cir. 1991) (A court's decision may apply retrospectively when it is a clarification of a rule rather than a change in the substantive law). "When Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation." Ford v. Ford Motor Credit Corp. (In re Ford), 574 F.3d 1279, 1283 (10th

11

Cir. 2009); see also Comm'r v. Keystone Consol. Indus., 508 U.S. 152, 159 (1993).

Congress' use of the term "clarification" therefore indicates an intent that the amendment apply retrospectively. Due to the contrary indications from Congress, we cannot conclude Congress clearly and expressly prescribed the proper reach of § 906.[6] Given the holding of Dobbs I, we may not hold that § 906 applies only prospectively absent an unambiguous statutory command. See McIlravy, 204 F.3d at 1035.

We therefore turn to the second step of the Landgraf analysis: We must ask if § 906 of the PPA would have retroactive effect if applied retrospectively.[7] That is, we examine whether the amendment "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 511 U.S. at 280. Notably, "[a] statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations. Rather, the court must

---

[6] The dissent contends that § 906(b) of the PPA should not impact our analysis of § 906(a). (Dissenting Op. 11-12.) We disagree. Section 906(b) expressly states that the textual changes it makes are clarifying rather than substantive. Our reasoning does not rely on any particular clarification made by that subsection, but instead highlights the tension between § 906(b) and § 906(c) on the question of whether § 906 should apply retrospectively. This tension prevents us from concluding that Congress clearly and expressly prescribed the reach of § 906 as a whole.

[7] In the interests of clarity, we will differentiate between statutes that operate retrospectively and statutes that operate retroactively. For our purposes, a retrospective statute applies to pre-enactment events. A retroactive statute is one that attaches legal rights, duties, responsibilities, or consequences to pre-enactment events. The cases to which we cite do not make this distinction and generally use the terms interchangeably.

determine whether the new provision attaches new legal consequences to events completed before its enactment." Hem v. Maurer, 458 F.3d 1185, 1190 (10th Cir. 2006).

Our precedent exempting Indian tribes from the preemptive reach of federal regulatory schemes leads us to conclude that the prior panel's determination that ERISA was always intended to exclude tribal plans was not clearly erroneous. "Tribes retain those attributes of inherent sovereignty not withdrawn either expressly or necessarily as a result of their status" until Congress acts to withdraw those powers. NLRB v. Pueblo of San Juan, 276 F.3d 1186, 1192 (10th Cir. 2002) (en banc). This respect for sovereignty has lead to the "well-established canon of Indian law that 'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'" Id. at 1191 (quoting Montana v. Blackfeet Tribe, 471 U.S. 759, 766 (1985)). "The canon applies to other statutes, even where they do not mention Indians at all." Pueblo of San Juan, 276 F.3d at 1191-92.

In this circuit, respect for Indian sovereignty means that federal regulatory schemes do not apply to tribal governments exercising their sovereign authority absent express congressional authorization.[8] Compare Pueblo of San Juan, 276 F.3d at 1200

---

[8] The district court cited to Phillips Petroleum Co. v. U.S. Environmental Protection Agency, 803 F.2d 545, 556 (10th Cir. 1986), for the proposition that "[f]ederal statutes of general application apply to Native Americans and their property interests." We have distinguished, however, between cases in which an Indian tribe exercises its property rights and cases in which it "exercise[s] its authority as a sovereign." Pueblo of

Continued . . .

13

(National Labor Relations Act does not preempt tribal government from enacting right-to-work ordinance), EEOC v. Cherokee Nation, 871 F.2d 937, 939 (10th Cir. 1989) (Age Discrimination in Employment Act does not apply to Indian tribes), and Donovan v. Navajo Forest Prods. Indus., 692 F.2d 709, 714 (10th Cir. 1982) (Occupational Safety and Health Act does not apply to business operated by an Indian tribe in part because its application would dilute principles of tribal self-government), with Osage Tribal Council ex rel. Osage Tribe of Indians v. Dep't of Labor, 187 F.3d 1174, 1180-81 (10th Cir. 1999) (Congress expressly abrogated tribal sovereign immunity in Safe Drinking Water Act). Although our early cases relied in part on treaties that expressly protected Indian tribes' sovereignty, see, e.g., Donovan, 692 F.2d at 711-12, we later recognized that a treaty was not a necessary prerequisite to exemption, see, e.g., Pueblo of San Juan, 276 F.3d at 1191.

Applying certain federal regulatory schemes to Indian tribes would impinge upon their sovereignty by preventing tribal governments from freely exercising their powers, including the "sovereign authority to regulate economic activity within their own territory." Id. at 1192-93. For this reason, ERISA would not apply to insurance plans purchased by tribes for employees primarily engaged in governmental functions unless Congress expressly or necessarily preempted Indian tribal sovereignty. Applying ERISA

San Juan, 276 F.3d at 1199. In the first set of cases, Phillips Petroleum applies; in the second, it does not. Pueblo of San Juan, 276 F.3d at 1199.

to such plans would prevent tribal governments from purchasing insurance plans for governmental employees in the same manner as other government entities, thus treating tribal governments as a kind of inferior sovereign. We do not assume Congress intended to infringe on Indian tribal sovereignty in this manner absent an express statement or strong evidence of congressional intent.

Anthem argues that the pre-PPA definition of governmental plan could not have covered tribal plans because a tribe is not the "Government of the United States, . . . the government of any State or political subdivision thereof, or . . . [an] agency or instrumentality of any of the foregoing." § 1002(32) (2002). It is true that an Indian tribal government does not fit into any of the articulated categories. However, we have held that "normal rules of construction do not apply when . . . matters involving Indians[] are at issue." Cherokee Nation, 871 F.2d at 939; see also Blackfeet Tribe, 471 U.S. at 766; Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 152 (1982). "[I]n cases where ambiguity exists," including those where there is silence with respect to Indian tribal governments, "and there is no clear indication of congressional intent to abrogate Indian sovereignty rights . . . , the court is to apply the special canons of construction to the benefit of Indian interests." Cherokee Nation, 871 F.2d at 939. Thus, for example, we interpreted the Age Discrimination in Employment Act's express exemption for "the United States or a corporation wholly owned by the Government of the United States," 29 U.S.C. § 630(b), to exempt Indian tribes. Cherokee Nation, 871 F.2d at 939.

15

Similarly, we held that Congressional silence exempted Indian tribes from the National Labor Relations Act. Pueblo of San Juan, 276 F.3d at 1200.[9]

We thus conclude that § 906(a)(2)(A) is at least arguably a clarification rather than a substantive amendment, and thus applies retrospectively to the events at issue. We recognize that Anthem's position may well have carried the day had the retrospectivity of § 906 been a matter of first impression, and the dissent reaches this conclusion after engaging in a de novo analysis. However, because the prior appeal determined that § 906 of the PPA applies retrospectively and none of the McIlravy exceptions to the law of the case doctrine apply, we are bound by the holding of Dobbs I. See McIlravy, 204 F.3d at 1035-36.

---

[9] Anthem notes that other courts interpreted the pre-PPA definition of "governmental plan" to not cover Indian tribal governments. See Lumber Indus. Pension Fund v. Warm Springs Forest  Prods. Indus., 939 F.2d 683, 685-86 (9th Cir. 1991); Smart v. State Farm Ins., Co., 868 F.2d 929, 936 (7th Cir. 1989). Given the Tenth Circuit presumption against extending federal regulatory schemes to Indian tribal governments absent express authorization or strong evidence of congressional intent, however, it is at least plausible that a pre-amendment panel of this court would have held that the exemption for "governmental plan[s]" covered Indian tribal governments.

Anthem also argues that, in a 2006 Notice, the Internal Revenue Service ("IRS") concluded that § 906 of the PPA substantively changed, rather than clarified, the definition of governmental plan. See I.R.S. Notice 2006-89, 2006-2 C.B. 772. Although the Notice states that § 906 "changed" the definition of governmental plan, the Notice gives no indication that the IRS actually considered whether the amendment was a clarification or whether it should apply retrospectively. Even if it did, we need not defer to the IRS' interpretation of a statute it does not administer. Francis v. Reno, 269 F.3d 162, 168 (10th Cir. 2001).

16

**D**

Our conclusion that § 906(a)(2)(A) of the PPA applies retrospectively does not resolve the ultimate ERISA preemption question. That question turns on whether the Dobbs' plan is a "governmental plan" under 29 U.S.C. § 1002(32), as amended. Although the district court concluded that the Dobbs' plan fell within the amended definition, it applied an erroneous interpretation of § 1002(32). We therefore remand again for the district court to make the factual determination of whether the Dobbs' plan qualifies as a governmental plan using the proper definition.

As amended, § 1002(32) defines "governmental plan" to include "a plan which is established and maintained by an Indian tribal government," but only when "all of the participants" in the plan are employees "substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)." Thus a plan qualifies as a governmental plan only if it is established and maintained by an Indian tribal government and all of the participants are employees primarily engaged in essential governmental functions rather than commercial activities.

On remand from <u>Dobbs I</u>, the district court ruled that the Dobbs' plan was a "governmental plan" because it was "established and maintained by an Indian tribal government" and Steven Dobbs' job duties—assisting in the management of the Tribal treasury—related to essential government functions. This analysis misunderstands the

17

test under § 1002(32). Rather than looking to Mr. Dobbs' duties, the court must determine whether all plan participants are employees "substantially all of whose services . . . are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)." § 1002(32).

Unfortunately, we cannot resolve this issue on appeal. As noted in Dobbs I, "[t]he determination of whether a tribal plan qualifies as a governmental plan under § 1002(32) requires a fact-specific analysis of the plan at issue and the nature of its participants' activities." 475 F.3d at 1178. As on the first appeal, we must remand to allow the district court to determine whether the Dobbs' plan qualifies as a governmental plan under § 1002(32).

### III

The Dobbs further argue that ERISA does not preempt their fraud-as-to-benefits claim under the rule set forth in Woodworker's. There, we held that ERISA preemption does not extend to employers' claims against insurance companies that arise from pre-contractual misrepresentations of plan terms. Woodworker's, 170 F.3d at 989-90. In such cases, the employer sues the insurance company "in its role as a seller of insurance, not as an administrator of an employee benefits plan." Id. at 991. Moreover, at the time of the fraud, the insurance company could not yet be a plan fiduciary, one of the four principal ERISA entities, because the employer had not yet purchased a plan. Id.

Arguably, this reasoning could apply to an individual employee's claim against a

18

plan fiduciary that misrepresented the terms of a plan: At the time of the alleged misrepresentation, the insurance company could be acting in its role as a seller of insurance, and the employee would not be a plan beneficiary if she had not yet purchased the plan.

Nevertheless, we conclude that Woodworker's is inapposite here. The Dobbs initially styled their fraud-as-to-benefits claim similarly to the claim in Woodworker's, asserting that Anthem "represented that its Blue Preferred policy allowed insureds to see any Blue Cross Blue Shield Preferred Provider and receive coverage at in-network levels," but that "[t]he statements were false." However, the Dobbs further allege in this claim that "Anthem refused to provide the highest level of benefits under the Policy[] even when the Dobbs met Anthem's requirements and condition[s]." In other words, the improper conduct for which the Dobbs seek relief is not Anthem's misrepresentation of the terms of the insurance plan, but Anthem's failure to abide by those terms. The Dobbs fail to cite any discrepancies between Anthem's representations and the terms of the plan. Instead, they claim only that Anthem promised to provide the "highest level of benefits" at "in-network" rates to plan members who used Preferred Providers, but did not actually do so. Indeed, the basis of their claim for bad faith breach of an insurance contract is that "[u]nder the policy, Anthem should have made an in-network determination regarding [the Dobbs' son's] treatment . . . and should have paid the claims at in-network levels."

As a result, Woodworker's does not apply to the Dobbs' claims. If their plan is

19

not a governmental plan within the meaning of § 1002(32), then the Dobbs' claims are subject to ERISA preemption.

## IV

For the foregoing reasons, we **REVERSE** the decision of the district court and **REMAND** for factfinding consistent with this opinion.

Nos. 07-1398 & 07-1402, <u>Dobbs v. Anthem Blue Cross & Blue Shield</u>

**BRISCOE**, Circuit Judge, concurring in part and dissenting in part:

I concur in part and dissent in part. I respectfully disagree with Part II of the majority opinion.[1] In my view, the law of the case does not prevent us from reaching the question of whether the Pension Protection Act ("PPA") applies retroactively. Additionally, I would conclude that the PPA applies only prospectively and that the pre-PPA version of ERISA did not include Indian tribes under the governmental plan exemption. And, as a result, I would conclude that we need not address whether the district court erred in determining whether the Dobbses' plan qualifies as a governmental plan under 29 U.S.C. § 1002(32), as amended. I agree with Part III of the majority opinion, but write separately to emphasize why the Dobbses' fraudulent inducement claim is preempted by ERISA. Accordingly, I would affirm the judgment of the district court.

## I

## A

The law of the case doctrine does not bar us from considering the issue of retroactivity. The majority concludes that "[i]n <u>Dobbs I</u>, we decided by necessary implication that § 906 of the PPA applies retrospectively." Maj. Op. at 7. I

---

[1] Part I of the majority opinion sets out the factual background and procedural history of the case. Parts II and III contain the legal analysis pertaining to the issues raised. Parts II and III are the focus of this separate opinion.

respectfully disagree.  "The law of the case doctrine is not an inexorable command but a rule to be applied with good sense."  Pittsburg County Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 711 (10th Cir. 2004) (quotation omitted).

In Dobbs I, the Dobbses appealed "the [d]istrict [c]ourt's dismissal of all claims, arguing that their state-law claims against Anthem [were] not preempted by federal law."  Dobbs v. Anthem Blue Cross & Blue Shield, 475 F.3d 1176, 1177 (10th Cir. 2007) (hereinafter "Dobbs I").  We stated:

> The threshold question in this case is whether federal or state law applies to an employee benefit plan established and maintained by a tribe for the benefit of its employees. If federal law applies, the next question is whether it preempts the state-law causes of action in this case.  We do not reach the second issue concerning preemption because we remand the case so that the [d]istrict [c]ourt can consider the first question in light of a recent change in federal law.

Dobbs I, 475 F.3d at 1177 (internal citation and footnote omitted; emphasis added).  We recognized that "[b]ased on the Dobbses' complaint, we do not have enough information to determine whether the benefit plan meets the requirements of § 1002(32) and therefore remand the case to the [d]istrict [c]ourt for consideration in light of the amended definition."  Id. at 1178.  "In light of the amended definition of 'governmental plan' under ERISA," we vacated the district court's previous order and remanded the case to the district court "for further proceedings consistent with this opinion."  Id. at 1179.  On remand, the district

court concluded that although the Dobbses' benefit plan met the new definition of governmental plan, the new definition does not apply retroactively. By deciding whether the PPA applies retroactively, the district court did not violate the law of the case.

In Dobbs I, we stated that we did not reach the preemption issue because we were remanding to allow the district court to consider "whether federal or state law applies to an employee benefit plan established and maintained by a tribe for the benefit of its employees . . . in light of a recent change in federal law." 475 F.3d at 1177. Thus, we allowed the district court to consider the effect of the PPA in the first instance. Because we declined to reach the issue of the effect of the PPA, the law of the case did not bar the district court from considering that issue on remand. See United States v. Wittig, 575 F.3d 1085, 1097 (10th Cir. 2009) ("The law of the case does not extend to issues a previous court declines to decide.").

According to the majority, the prior panel decided the effect of the PPA by necessary implication because "(1) resolution of the issue was a necessary step in resolving the earlier appeal; [and] (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal . . . ." Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9, 10 F.3d 700, 707 (10th Cir. 1993). I conclude that neither situation applies to the case at bar.

The resolution of the retroactivity issue was not a necessary step in resolving the earlier appeal. We resolved the earlier appeal by directing the district court to consider whether federal or state law applied to the benefits plan in light of the PPA. The majority relies heavily on our statement in Dobbs I that: "[i]f the Dobbses' benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem." 475 F.3d at 1179. According to the majority, this means that we "expressly remand[ed] only the fact-specific analysis and conclud[ed] that this analysis alone would determine if ERISA preempted the Dobbs' claim . . . ." Maj. Op. at 7. I disagree. We explicitly did not reach the preemption issue. See Dobbs I, 475 F.3d at 1177 ("We do not reach the [preemption issue] because we remand the case so that the District Court can consider [whether federal or state law applies] in light of a recent change in federal law."). Therefore, our statement that "[i]f the Dobbses' benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem," id. at 1179, is best understood as dicta, which "is not subject to the law of the case doctrine." Homans v. City of Albuquerque, 366 F.3d 900, 904 n.5 (10th Cir. 2004). Further, we did not remand to the district court simply to conduct factfinding; rather, we issued a broader remand. See Pittsburg County 358 F.3d at 711 (noting that the law of the case did not

apply because "the remand to the district court was general, stating only that the remand was 'for further proceedings consistent with this opinion.'"). We remanded to the district court to consider in the first instance whether state or federal law applied in light of the PPA.[2] "When further proceedings follow a general remand, the lower court is free to decide anything not foreclosed by the mandate issued by the higher court." Guidry, 10 F.3d at 706 (quotations omitted).

Additionally, I disagree with the majority's conclusion that the district court "directly contravened the instruction from Dobbs I and thus abrogated that decision." Maj. Op. at 8–9. To the contrary, the district court did what we directed it to do — it considered whether federal law applied in light of the enactment of the PPA. Thus, the district court did not abrogate Dobbs I. Accordingly, I would conclude that the prior panel did not decide by necessary implication that the PPA applied retroactively, and I would turn to the merits of

---

[2] Moreover, the parties did not argue the retroactivity issue in Dobbs I. Indeed, neither party even alerted us to the enactment of the PPA while Dobbs I was pending, and we found it necessary to remind the parties of the importance of filing a notice of supplemental authority under Federal Rule of Appellate Procedure 28(j). See Dobbs I, 475 F.3d at 1179. Under these circumstances, it is particularly troubling that the majority concludes that we are bound by the law of the case. Cf. Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464, 469 (9th Cir. 2000) (departing from the law of the case when the prior panel clearly erred "for want of proper briefing").

- 5 -

the issues before this court.

In summary, I differ from the majority's views in these regards. The majority takes a very narrow reading of <u>Dobbs I</u>, relying entirely on a single sentence: "If the Dobbses' benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem." <u>Dobbs I</u>, 475 F.3d at 1179. But the majority seems to ignore the other language that suggests a broader remand, e.g., "We do not reach the [preemption issue] because we remand the case so that the District Court can consider [whether federal or state law applies] in light of a recent change in federal law." <u>Id.</u> at 1177. Ultimately, the majority appears to start from the conclusion that we decided the "retrospectivity" question and remanded only for factual analysis. For example, the majority reasons: "We did not issue a broad mandate to reconsider our determination that the PPA applies retrospectively," Maj. Op. at 7 n.2, but this begs the question — it assumes that we made that determination in the first place. Further, the majority suggests that we answered the retrospectivity issue when we remanded "only the fact-based analysis 'to the District Court for consideration in light of the amended definition.'" Maj. Op. at 8 n.3 (quoting <u>Dobbs I</u>, 475 F.3d at 1178). If that is indeed the majority's interpretation, that is a rather strained reading of "for consideration in light of the amended definition." Moreover, we issued a rather generic, open-ended mandate,

which stated: "In light of the amended definition of 'governmental plan' under ERISA, we VACATE the District Court's order and REMAND for further proceedings consistent with this opinion." Dobbs I, 475 F.3d at 1179.

Reading Dobbs I as a whole, I conclude that we remanded the case to the district court for consideration in light of a change in federal law, not simply to conduct fact-finding. Because we did not remand only the factual analysis, we did not decide by implication that the PPA applies retrospectively. Consequently, the law of the case doctrine does not apply.

**B**

Even if the law of the case doctrine is applicable, it does not bar us from considering the issue of retroactivity. "We have routinely recognized that the law of the case doctrine is discretionary, not mandatory, and that the rule merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power." Kennedy v. Lubar, 273 F.3d 1293, 1299 (10th Cir. 2001) (quotations omitted). One well-recognized exception to the law of the case doctrine is "when the decision was clearly erroneous and would work a manifest injustice." McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1035 (10th Cir. 2000) (quotation omitted). If, as the majority concludes, the prior panel implicitly decided that the PPA "applies retrospectively to the events at issue," Maj. Op. at 16, that decision was clearly erroneous. As explained more

- 7 -

fully in the discussion that follows, based on the plain text of the statute, the PPA is unambiguously prospective only, and prior to the PPA, ERISA applied to pension plans established and maintained by Indian tribes.[3]

Further, this clear error could work a manifest injustice by depriving Anthem of the "opportunity to present [its] dispositive defense [of preemption] — a defense that fully vindicates [Anthem's] right to be free from a trial and an adverse damage award."  See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 789 (9th Cir. 2000) (exercising its discretion to depart from the law of the case where the prior panel's clear error would work a manifest injustice by depriving the defendants of their statute of limitations defense).  Additionally, by concluding that the PPA has retroactive effect, there could be serious economic consequences for insurers such as Anthem who would be open to substantial liability under state law causes of action.  Cf. Mendenhall, 213 F.3d at 469 (prior panel's error would work a manifest injustice when the failure to cap attorneys' fees threatened "adverse fiscal consequences" to the U.S.

_____

[3] The majority contends that I reach this conclusion "after engaging in a de novo analysis."  Maj. Op. at 16.  Because the law of the case doctrine does not bar our consideration, I would review the retroactivity issue de novo.  Nonetheless, I would reach the same conclusion under clear error analysis, as I have a "clear conviction of error with respect to a point of law on which [the] previous decision was predicated."  Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981) (quotation omitted).

Treasury that "could prove substantial"). Accordingly, I would exercise our discretion to depart from the law of the case.

## II

## A

Prior to the PPA, ERISA defined "governmental plan" in relevant part as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." ERISA, Pub. L. No. 93-406, § 3(32), 88 Stat. 829, 837 (1974) (current version at 29 U.S.C. § 1002(32)). In August 2006, however, Congress amended the definition of "governmental plan" under ERISA to include certain plans established and maintained by Indian tribes. The amended definition provides:

> The term "governmental plan" includes a plan which is established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of the Internal Revenue Code of 1986), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of such Code), or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)[.]

PPA, Pub. L. No. 109-280, § 906(a)(2)(A), 120 Stat. 780, 1051 (codified as amended at 29 U.S.C. § 1002(32)).

Therefore, if the new definition applies to the Dobbses' plan, then the plan

- 9 -

will fall within the exception to ERISA preemption, and their state law claims would not be preempted by ERISA. Anthem, however, contends that the Dobbses' plan is not encompassed within the new definition because the new definition does not apply retroactively.

The Supreme Court has recently explained the proper sequence of analysis regarding retroactivity of statutes:

> We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absence of a clear indication from Congress that it intended such a result.

Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37–38 (2006) (internal quotations, citations, and alterations omitted). Thus, our first inquiry is whether Congress "has expressly prescribed the statute's proper reach." Id. at 37.

The stated effective date of the PPA amendment to the definition of governmental plan is as follows: "Effective Date.—The amendments made by this section shall apply to any year beginning on or after the date of the enactment of this Act." PPA § 906(c), 120 Stat. 780, 1052. The date of enactment of the PPA was August 17, 2006. Pub. L. No. 109-280, 120 Stat. 780, 1172.

The plain language of this effective date provision dictates that the amended definition shall apply to any "year" beginning on or after August 2006. To determine what "year" means, we look first to the text to discern the meaning. See Wright v. Fed. Bureau of Prisons, 451 F.3d 1231, 1234 (10th Cir. 2006) (stating that for issues of statutory construction, we should "interpret the words of the statute in light of the purposes Congress sought to serve" and that we should begin with "the language employed by Congress," and "read the words of the statute in their context and with a view to their place in the overall statutory scheme" (internal quotation omitted)); Colorado High Sch. Activities Ass'n v. Nat'l Football League, 711 F.2d 943, 945 (10th Cir. 1983) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (internal quotation omitted)).

Anthem contends that "year" unambiguously means "plan year" and that therefore the clear language of the statute is that it applies prospectively to plan years established and maintained after August 2006. The Dobbses contend that Congress used the phrase "plan year" in other portions of the statute, and that if Congress had intended to mean "plan year," it would have said so. The Dobbses argue that "year" is more broad, and means that the PPA's change to the definition of governmental plan applies to any "issues" "in the present year" that

arise "under earlier 'plan years.'"  Appellants' Br. at 33–34.

The majority appears to find the Dobbses' argument persuasive, see Maj. Op. at 10, but I cannot square the Dobbses' argument with the text of the statute. The text of section 906(a) of the PPA amends the definition for governmental plans (and therefore the exception from preemption) to include certain pension plans "established and maintained by an Indian Tribal government."  PPA § 906(a)(2)(A).  The effective date states that this amended definition, and therefore exception from preemption, applies "to any year beginning on or after" August 2006.  Id. § 906(c).  "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."  Landgraf v. USI Film Prods., 511 U.S. 244, 257 (1994) (footnote omitted).

I conclude this language unambiguously states that the new definition applies only to governmental plans beginning on or after August 17, 2006.  See Lockheed Corp. v. Spink, 517 U.S. 882, 896–97 (1996) ("Where, as here, the temporal effect of a statute is manifest on its face, there is no need to resort to judicial default rules, and inquiry is at an end." (internal quotation omitted)).  No party has pointed to any legislative history that would provide otherwise.  See Colorado High Sch. Activities Ass'n, 711 F.2d at 945 ("If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the

contrary, that language must ordinarily be regarded as conclusive." (internal quotations omitted)).[4]   It is not the province of this court to revise a statute when the express language of the statute is clear.  See Reames v. Oklahoma ex rel. Okla. Health Care Auth., 411 F.3d 1164, 1173 (10th Cir. 2005).

Additionally, I disagree with the majority's contention that Congress has given contrary indications regarding the proper reach of subsection 906(a) of the PPA.  The majority concludes that subsection 906(b) uses the term "clarification" and thus, Congress "indicate[d] an intent that the amendment apply retrospectively."  Maj. Op. at 11.  To be sure, "[w]hen Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation."  Ford v. Ford Motor Credit Corp. (In re Ford), 574 F.3d 1279, 1283 (10th Cir. 2009).  But Congress did not use the term "clarification" in subsection 906(a), which amended ERISA's definition of "governmental plan."  Congress used the term "clarification" only in subsection

---

[4] If anything, the legislative history supports the conclusion that the PPA as enacted should be applied only prospectively.  An earlier version of the bill provided for the effective date as follows: "The amendments made by this subtitle shall apply to any year beginning before, on, or after the date of the enactment of this Act."  S. 1783, 109th Cong. § 1314 (2005).  However, the ultimate version that was passed stated: "any year beginning on or after the date of the enactment of this Act."  PPA § 906(c).  At the very least, the legislative history is hardly an expression of clear legislative intent that the PPA should be applied retroactively.

906(b), which does not apply to ERISA.[5]  Although subsection 906(b) may make "clarifying rather than substantive" changes, Maj. Op. at 11 n.6, it does not follow that subsection 906(a) is a clarification.  Subsection 906(a) — the only relevant subsection that amends ERISA — does not use the term "clarification." Thus, I see no contrary indications from Congress or tension within section 906: subsection 906(a) amends the definition of governmental plans to include certain plans of Indian tribes, and subsection 906(b) is a "clarification" of the Internal Revenue Code.

Congress "has expressly prescribed the statute's proper reach," as prospective from the effective date, and thus, our retroactivity analysis is at an end.  Landgraf, 511 U.S. at 280.  As a result, the amended statutory definition of governmental plan in the PPA does not apply to the case at bar.

Moreover, I disagree with the majority's analysis at the next step of the Landgraf analysis, whether the PPA would have retroactive effect.  The majority concludes that because of "[o]ur precedent exempting Indian tribes from the preemptive reach of federal regulatory schemes . . .  the prior panel's

---

[5] Subsection 906(b) of the PPA, as originally enacted, amended ERISA at 29 U.S.C. § 1321 to include certain Indian tribal pension plans.  However, Congress enacted technical corrections to the PPA in 2008.  Following these technical corrections, subsection 906(b) amends only the Internal Revenue Code, not ERISA.  See Pub. L. No. 110-458, § 109(d)(2), 122 Stat. 5092, at 5112.

determination that ERISA was always intended to exclude tribal plans was not clearly erroneous." Maj. Op. at 12. First, the prior panel's decision in <u>Dobbs I</u> does not reach this conclusion explicitly. Second, as discussed more fully below, I think our precedent is clear that prior to the PPA, ERISA applied to plans established or maintained by Indian tribes.

Further, the PPA did not simply amend the definition of "governmental plan" to include all plans established and maintained by Indian tribes. Rather, the PPA included a very specific kind of tribal plan.[6] It must be a plan where "all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)." PPA § 906(a)(2)(A). There is no suggestion that ERISA was always intended to exclude this specific formulation of tribal

---

[6] The legislative history suggests that Congress originally considered a version of the PPA that amended ERISA to include in 29 U.S.C. § 1321(b) the following language: "established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of the Internal Revenue Code of 1986), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of such Code), an agency or instrumentality of an Indian tribal government or subdivision thereof, or an entity established under Federal, State, or tribal law that is wholly owned or controlled by any of the foregoing." S.1783, 109th Cong. § 1313(b) (2005) ("Pension Security and Transparency Act of 2005). But the enacted version of the PPA included a much more specific formulation. <u>See</u> PPA § 906(a).

plan. Thus, I cannot conclude that the PPA merely clarified the definition of "governmental plan." Expanding an exemption to ERISA preemption is a profound change in existing law, with effects on the providers of employee benefit plans such as Anthem. Accordingly, I would adhere to the presumption that "[i]f the statute would operate retroactively, . . . it does not govern absent clear congressional intent favoring such a result." Landgraf, 511 U.S. at 280.

However, this conclusion does not end the inquiry because the Dobbses have also argued that even if the PPA does not apply retroactively, the earlier version of ERISA would not preempt their claim. They contend that our circuit does not construe federal regulatory statutes to cover tribal governments unless Congress expresses its intent to cover tribes. The majority also relies on our precedent exempting Indian tribes from certain federal regulatory schemes, but the majority does so under its inquiry into whether the PPA has retroactive effect or if it is merely a clarification. Regardless of the context, I would conclude that our precedent clearly establishes that prior to the enactment of the PPA, ERISA applied to plans established or maintained by Indian tribes.

**B**

The majority states that "[i]n this circuit, respect for Indian sovereignty means that federal regulatory schemes do not apply to tribal governments exercising their sovereign authority absent express congressional authorization."

Maj. Op. at 13.  But our case law recognizes a distinction between cases where a tribe "has exercised its authority as a sovereign" and where a tribe acts "in a proprietary capacity such as that of employer or landowner."  NLRB v. Pueblo of San Juan, 276 F.3d 1186, 1199 (10th Cir. 2002) (en banc) (emphasis added).

When an Indian tribe is acting in its proprietary capacity, we apply the rule set forth in Federal Power Commission v. Tuscarora Indian Nation, 362 U.S. 99 (1960).  See Pueblo of San Juan, 276 F.3d at 1199.  As the Supreme Court stated in Tuscarora: "a general statute in terms applying to all persons includes Indians and their property interests."  362 U.S. at 116.  We have recognized three exceptions to the Tuscarora rule:

> (1) the law touches exclusive rights of self-governance in purely intramural-matters; (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations.

Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 984 (10th Cir. 2005) (Lucero, J., concurring) (quoting Nero v. Cherokee Nation of Okla., 892 F.2d 1457, 1462–63 (10th Cir. 1989)).

Thus, to determine whether a generally applicable federal statute applies to an Indian tribe, we must first determine whether the tribe is exercising its sovereign authority or whether it is acting in its proprietary capacity.  See Pueblo of San Juan, 276 F.3d at 1199.  If the tribe is exercising its authority as a

sovereign, the <u>Tuscarora</u> rule does not apply. <u>Id.</u> However, if the tribe is acting in its proprietary capacity, the <u>Tuscarora</u> rule does apply, <u>see id.</u>, and we must then determine whether there is an exception to that rule, <u>see Nero</u>, 892 F.2d at 1462–63.

Applying this framework to the case at bar, it is clear that the <u>Tuscarora</u> rule applies. The present case involves an Indian tribe acting in its proprietary capacity as employer or purchaser of insurance, not in its sovereign authority. <u>See Pueblo of San Juan</u>, 276 F.3d at 1199. Although we have previously held that certain federal regulatory schemes do not apply to Indian tribes as employers, those cases involved Indian treaties. <u>See EEOC v. Cherokee Nation</u>, 871 F.2d 937, 938 (10th Cir. 1989) ("[W]e hold that ADEA is not applicable because its enforcement would directly interfere with the Cherokee Nation's treaty-protected right of self-government."); <u>Donovan v. Navajo Forest Prods. Indus.</u>, 692 F.2d 709, 710 (10th Cir. 1982) (agreeing that to "apply OSHA to [the tribal entity] would violate the Navajo Treaty"). The majority attempts to wave away this critical distinction by citing <u>Pueblo of San Juan</u> for the proposition that we have since "recognized that a treaty [is] not a necessary prerequisite to exemption." Maj. Op. at 14. But <u>Pueblo of San Juan</u> did not rely on the existence of a treaty because that case involved a Tribe's inherent sovereign authority: the authority to enact its own laws in its territory. <u>See</u> 276 F.3d at 1195 ("In the absence of clear

- 18 -

evidence of congressional intent . . . federal law will not be read as stripping tribes of their retained sovereign authority to pass right-to-work laws and be governed by them."). Where a tribe's sovereign authority is not at issue, such as when it is acting as an employer, we do not apply Pueblo of San Juan, but we apply the Tuscarora rule.

The majority does not identify precisely what sovereign authority it believes is at stake. The majority refers to the "sovereign authority to regulate economic activity within their own territory." Maj. Op. at 14 (quoting Pueblo of San Juan, 276 F.3d at 1192–93). But the case at bar involves no regulation of economic activity. Cf. Pueblo of San Juan, 276 F.3d at 1195 (discussing tribes' "retained sovereign authority to pass right-to-work laws and be governed by them"). The majority also suggests that "[a]pplying ERISA to such plans would prevent tribal governments from purchasing insurance plans for governmental employees in the same manner as other government entities, thus treating tribal governments as a kind of inferior sovereign." Maj. Op. at 14 (emphasis added). Thus, the majority shifts from a tribe's sovereign authority to regulate economic activity to its ability to act as a purchaser of insurance, without clarifying how the purchasing of insurance plans is a sovereign authority. Moreover, our inquiry is whether sovereign authority is at issue, not whether the federal government treats different sovereigns differently, or even somehow as an "inferior sovereign." In

Pueblo of San Juan, we recognized that the Tuscarora rule "does not apply . . . where the matter at stake is a fundamental attribute of sovereignty and a necessary instrument of self government and territorial management . . . ." 276 F.3d at 1200 (quotations omitted). Here, there is no sovereign authority at stake, and therefore, the Tuscarora rule applies.

Applying the Tuscarora rule to this case, I would conclude that prior to the PPA, ERISA applied to Indian tribes. The Seventh Circuit was faced with the same question in Smart v. State Farm Insurance Co., 868 F.2d 929 (7th Cir. 1989), prior to the enactment of the PPA. In that case, a member of an Indian tribe (the insured) sued the insurer alleging that the insurer failed to pay claims for medical expenses. 868 F.2d at 930. The insured claimed that ERISA did not apply to "an employee benefits plan established and operated by an Indian Tribe for Tribe employees . . . ." Id. The Seventh Circuit recognized that "ERISA is clearly a statute of general application, one that envisions inclusion within its ambit as the norm." Id. at 933. Then, the Smart court applied the Tuscarora rule and its exceptions — the same exceptions that this circuit recognizes. See id. at 934–36; Nero, 892 F.3d at 1462–63 (recognizing the three exceptions to the Tuscarora rule). First, the court was unable "to uncover a single specific treaty or statutory right that would be affected by application of ERISA." Smart, 868 F.2d at 935. Similarly, neither the Dobbses nor the majority have identified a treaty or

statutory right that would be affected by application of ERISA.

The Seventh Circuit in Smart then turned to whether ERISA would interfere with the Tribe's "self-governance in intramural affairs." Id. The Court stated:

> The application of ERISA to this case would not impermissibly upset the Tribe's self-governance in intramural matters. ERISA does not broadly and completely define the employment relationship — even less so than the federal withholding tax. It is only applied to an employment relationship if the employer decides to offer an employee benefit plan. Even then, ERISA merely requires reporting and accounting standards for the protection of the employees. Moreover, the activity underlying this challenge to ERISA is the Tribe's subscription of services and pooling of risks with [the insurer], an outside, non-Indian agent. ERISA is instructive on how a covered health insurance plan operates vis-á-vis the beneficiaries and the trustee, not between the [health center] and [the plaintiff]. In sum, plaintiff has failed to demonstrate how ERISA will intrude upon Tribal self-governance; ERISA merely imposes beneficiary protection while in no way limiting the way in which the Tribe governs intramural matters.

Id. at 935–36 (footnotes omitted). Again, neither the Dobbses nor the majority have identified or discussed how ERISA would upset tribal self-governance in intramural matters.

Finally, the Seventh Circuit concluded that the plaintiff was "unable to point to any evidence of congressional intent that ERISA is not applicable to Tribe employers and Indians." Id. at 936. In the case at bar, the Dobbses argue that there is such evidence because Congress defined a governmental plan to include any "instrumentality" of a "State or political subdivision thereof. . . ." 29

- 21 -

U.S.C. § 1002(32). The Seventh Circuit rejected a similar argument that the then-effective version of ERISA indicated "Congress' unwillingness to have ERISA apply to sovereigns generally, and thus Indian tribes should also be similarly exempt . . . ." 868 F.2d at 936. The court noted that there are "significant differences between states and their political subdivisions on one hand and Indian Tribes on the other." Id. The majority appears to agree that "an Indian tribal government does not fit into any of the articulated categories" under ERISA prior to the PPA. Maj. Op. at 15.

I find the Seventh Circuit's analysis of ERISA under the Tuscarora rule and its exceptions to be very persuasive, particularly where the Dobbses have made nearly identical arguments to those made by the plaintiffs in Smart. See also Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus., 939 F.2d 683, 686 (9th Cir. 1991) (holding that ERISA applies to a tribally owned and operated mill). The majority appears to disagree, relying on our "presumption against extending federal regulatory schemes to Indian tribal governments . . . ." Maj. Op. at 15 n.9. But our presumption, articulated in Pueblo of San Juan, is a presumption against extending certain federal laws and regulatory schemes to Indian tribal governments acting in their sovereign authority. Because this is not a case involving a tribe's sovereign authority, I would agree with the Seventh Circuit's application of the Tuscarora rule, and I would conclude that ERISA

- 22 -

applied to plans established or maintained by Indian tribes prior to the PPA. Following this rationale, I would also conclude that the district court correctly ruled on remand that the pre-PPA version of ERISA did not exempt the Dobbses' claim from ERISA coverage.

### III

Although I agree with Part III of the majority opinion, I write separately to emphasize why the Dobbses' fraudulent inducement claim is preempted by ERISA.

The Dobbses' amended complaint alleged in part as follows:

81. Through literature . . . Anthem represented that its Blue Preferred policy allowed insureds to see any Blue Cross Blue Shield Provider and receive coverage at in-network levels . . . .
82. The statements were false.
83. Anthem knew or should have known its statements were false.
84. Anthem refused to provide the highest level of benefit under the Policyeven [sic] when the Dobbs met Anthem's requirements and conditions.
85. Anthem's refusal to provide the promised service and benefits has caused the Dobbs significant economic and noneconomic damages.

App. at 11. I agree with the majority that the Dobbses' claim, although styled as "fraudulent inducement," appears to be a claim for benefits: the Dobbses alleged that "Anthem refused to provide the highest level of benefit under the Policy," and Anthem refused "to provide the promised service and benefits . . . ." Id. (emphasis added).

- 23 -

"[T]he allocation of benefits under an employee benefits plan goes to the core of ERISA, and so such claims are usually preempted." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 991 (10th Cir. 1999); see also Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc., 57 F.3d 1040, 1042 (11th Cir. 1995) (finding preemption "where state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits"). Moreover, the fraudulent inducements claims are preempted because the "factual basis for . . . plaintiff[s'] state law claim[] directly concerns the alleged improper administration of the benefit plan." Settles v. Golden Rule Ins. Co., 927 F.2d 505, 509 (10th Cir. 1991).

Further, the Dobbses' claim could affect the structure, administration, or benefits provided by the plan. Cf. Airparts Co. v. Custom Benefit Servs. of Austin, Inc., 28 F.3d 1062, 1066 (10th Cir. 1994) ("Plaintiffs make no claim based on any rights under the plan; there is no allegation that any of the plan's terms have been breached."). "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefits plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." Id. at 1065 (quotation omitted). The Dobbses' action, which is based on Anthem's alleged refusal to provide benefits under the policy, could "interfere with the calculation of benefits

- 24 -

owed to an employee," and thus, is preempted.  See Monarch Cement Co. v. Lone Star Indus., Inc., 982 F.2d 1448, 1452 (10th Cir. 1992) (quotation omitted).

I would affirm the district court's ruling that the PPA does not apply retroactively to the plan in question and that the pre-amendment version of ERISA preempts the Dobbses' state law claims.  Given that conclusion, I would not reach whether the district court properly conducted its fact finding.